# Exchange Mutual Fire Insurance Company *v*. Mutual Fire Insurance Company of Reading, Appellant.

*Contract—Verbal contract—Case for jury—Insurance.*

1. Where in an action of assumpsit both parties are insurance companies, and the question involved relates to an agreement of reinsurance, and it appears that the agreement was made verbally between officers of the respective companies, the question as to what were the terms of the contract is for the jury.

2. In such a case where it appears that the reinsurance was to be at a rate termed a "tariff rate," and the evidence is conflicting, as to whether such rate was the one fixed by the underwriters' association, or merely had reference to a rate at which a particular insurance was written, the conflicting evidence is for the determination of the jury.

3. Where, in such a case, the dealings between the two companies required a daily report to be submitted by the plaintiff to the defendant showing the risks offered, the number of the policy, the date, term, expiration and rate of premium, and it also appeared that the defendant had a right to reject policies upon receipt of the daily report and at times exercised this right, the trial court is bound to submit to the jury the

effect of the daily reports in the course of business adopted for a number of years, to determine whether, admitting the tariff rate, meant the underwriters' rate, there were not a waiver of this rate.

Argued Nov. 9, 1914. Appeal, No. 264, Oct. T., 1913, by defendant, from judgment of C. P. Berks Co., Aug. T., 1909, No. 92, on verdict for plaintiff in case of Exchange Mutual Fire Insurance Company v. Mutual Fire Insurance Company of Reading. Before RICE, P. J., ORLADY, HEAD and KEPHART, JJ. Affirmed.

Assumpsit to recover the losses on policies issued by the defendant company reinsuring the plaintiff company. Before WAGNER, J.

At the trial the defendant claimed a set-off larger than plaintiff's demand arising out of a contract whereby the defendant agreed to reinsure plaintiff for risks written by it.

The jury returned a verdict for plaintiff for $1,171.61.

On a motion for a new trial WAGNER, P. J., filed the following opinion:

Plaintiff brought suit against the defendant for the recovery of $885.49, with interest from January 1, 1909, making a total claim of $1,117.61. There was no dispute between the parties as to the fact that this amount was due by the defendant to plaintiff for return premiums on policies canceled and on account of losses that had been paid by the plaintiff company. What defendant claimed was that it had a set-off exceeding plaintiff's claim by $1,836.91. It contended that the jury should find in its favor and certify in its verdict that the plaintiff is indebted to the defendant for the difference between the amount of defendant's set-off and the amount of plaintiff's claim, that is, that they certify that the plaintiff is indebted to defendant to the amount of $1,836.91.

The testimony of W. Morris Deisher, secretary, treas-

urer, and director of the defendant company, shows that in the beginning of August, 1905, Arthur Freeston, representing the plaintiff, called upon him, and that Freeston asked defendant to reinsure the plaintiff.   That Freeston stated that they were getting tariff rates from which defendant agreed to pay plaintiff a dividend of twenty-five per cent so that plaintiff could reimburse its policy holders and that the defendant was further to pay the plaintiff twenty per cent on the net premiums, that is, plaintiff was to have forty per cent and the defendant sixty per cent of the premiums and that that proposition was agreed to.  (N. of T., page 5.)   In this Mr. Deisher is corroborated by John G. Capallo, one of defendant's clerks.  (N. of T., page 15.)   Deisher further stated that business was carried on between the two parties until November, 1908, when the policies on the outstanding insurance were canceled after he had ascertained that the plaintiff had cut rates.   Upon cross-examination (N. of T., page 8) Mr. Deisher, to the question: "Were you bound, or was the Reading Company bound to accept all reinsurance that was offered by the Exchange Company, provided it was a tariff rate?" answered that it was not.   When asked what it was to do by reason of the aforesaid so-called agreement, he answered: "Pay the 25% dividends . . . . on accepted business."   He further testified that in what is called the agreement of August, 1905, the defendant was not bound by a tariff rate, but could exercise its option in the acceptance or rejection of policies.   That it could do so is further shown by the subsequent method of business.   Mr. Deisher (pages 9, 10) testified that the Reading Company was not bound to reinsure the Exchange Company on all business that was submitted; that daily reports were issued by the defendant and sent to the Reading Company, stating what risks were to be reinsured, the number of the policy to be issued, the name of the reinsured company, the date, term, expiration, rate of premium, and description of the insured

property.  That after the daily report was thus received, if there was any matter in the report, including the premium, that was not satisfactory to the defendant company, that thereupon the defendant company had the option of immediately canceling the policy.  That as a matter of fact it did cancel numerous policies immediately upon the receipt of the daily reports, some on the ground that the rate was not high enough.

An examination of the testimony shows that the proposition, called by the defendant an agreement, alleged to have been made in the beginning of August, 1905, was not binding upon or recognized by either of these parties, except as to the division of the premiums, that is, the forty per cent and sixty per cent basis. If the acceptance of the proposition of August, 1905, can be called a contract, the subsequent course of dealing conclusively showed a waiver of every term thereof except the per cent of distribution of premiums.  These parties were only bound as to other matters after the daily reports had been received and each individual policy acted upon and accepted by the defendant company.  The acceptance in this manner of each policy constituted a distinct and separate agreement in which the only term of the proposition of August, 1905, that was recognized as binding upon both parties was the matter of the per cent of premiums to which each party was entitled.  Under defendant's testimony as to their method of business it is clear that the defendant was not bound to accept policies of insurance upon the tariff rate even if satisfactory in all other respects, but that the question of the rate was a matter to be acted upon on receipt of the daily reports.  If the term as to tariff rate was not binding upon the defendant it was also not binding upon plaintiff.  A contract binds both parties or neither: Hill v. Roderick, 4 W. & S. 221; Philips v. Mining and Mfg. Co., 7 Phila. 619; Corbet v. Oil City Fuel Co., 21 Pa. Superior Ct. 80; Grove v. Hodges, 55 Pa. 504–516; N. C. R. R. Co. v. Walworth, 193 Pa. 207–213.

One of the reasons assigned for a new trial is that the question of waiver should not have been submitted to the jury; that is, that there was no evidence to show any waiver of the tariff rate. As we now view this case we consider that defendant by its admitted course of dealing conclusively showed a waiver in the proposition of August, 1905, of the tariff rate, and that instead of submitting, as we did, the question of waiver to the jury, we should have instructed it that the defendant had waived the question of tariff rates. The defendant's entire set-off was based upon its contention that the tariff rate agreed upon was the underwriters' tariff rate as applied to the respective districts where the insurance was taken and that the plaintiff by cutting these tariff rates had deprived the defendant of receipts of premiums which would have exceeded plaintiff's claim by $1,836.91. It was not contended by the defendant that it did not receive its full sixty per cent of the actual premiums received by the plaintiff company. As we consider that there was an admitted waiver of the tariff rate it then becomes a matter of no consequence as to what was meant by tariff rate, whether as contended for by the defendant or by the plaintiff. Therefore, although that question was also submitted to the jury, its finding thereon whatever it may have been or howsoever supported by evidence, did no harm.

Plaintiff asked for binding instructions. This we refused to give, but submitted the case to the jury. They found in favor of the plaintiff. Upon defendant's testimony alone we consider that plaintiff was clearly entitled to the verdict that it received.

Rule for new trial discharged.

*Errors assigned* were various instructions.

C. H. Ruhl, for appellant.

T. I. Snyder, of Snyder & Zieber, for appellee.

OPINION BY KEPHART, J., February 24, 1915:

The opinion of the learned judge of the court below has fully demonstrated the futility of this appeal. We will review the salient features of the case without attempting to summarize the testimony. The first assignment of error complains of the trial court permitting the jury to determine the nature of the contract between the parties. The evidence shows that it was made verbally between officers of the respective companies and provided for a reinsurance with the distribution of premiums as the consideration. The defendant based its counterclaim at the trial on this oral contract. The contract thus made up and the terms thereof were essentially matters for the jury. The argument that plaintiff's letter embodies the terms of the contract is without merit; it was a reply to the defendant's letter concerning Ohio insurance. The stock company rate there mentioned related to insurance in that state. The first assignment of error is overruled.

The second assignment of error objects to the court's instructions as to "tariff rate." The contract for reinsurance, the defendant contends, was based on the tariff rate as fixed by the Underwriters' Association, and insurance was taken by the plaintiff at a lower rate than the rates established by this association. The plaintiff's position was, that the tariff rate had reference to the rate at which a particular insurance was written and did not refer to any fixed schedule adopted by persons who had no authority to act for it. It was in evidence that some insurance companies have their own schedule of rate. This would be their tariff rate. While the rates established after careful inspection by the board of underwriters, covering ninety-five per cent of the properties insured, and affecting ninety per cent of insurance companies, may be persuasive evidence that it was the rate intended by the parties, it is not conclusive. The plaintiff was not a member of the Underwriters' Association and without agreement would not be bound by their ac-

tion.   We cannot say as a matter of law that the tariff rate meant the rate established by the Underwriters' Association, but what it meant in this contract was what the parties understood by it.   This was susceptible of oral proof which both sides submitted.   There were over 800 policies reinsured, some based on the short term rate and a pro rata rate; in fact when the affidavit of defense was filed, based upon information received from several rate bureaus, it was so inconsistent with the testimony of their experts as to these same rates that it was necessary to amend the affidavit by changing scores of items.   There is no fixed legal definition of the words "tariff rates" used in connection with insurance.   The second assignment of error is overruled.

As to the third assignment of error, the dealings between the parties required a daily report to be submitted by the plaintiff to the defendant, showing the risks offered, the number of the policy, the date, term, expiration and rate of premium.   The defendant was not obliged to accept these risks and if it did accept any it had before it the rate at which the insurance was written.   The officer of the defendant who made this contract was a member of the local board of underwriters.   It had complete knowledge of each risk offered, from which and upon inquiry it might have been learned if the rate was in accordance with the underwriters' schedule.   The trial court could not escape the duty of submitting to the jury the effect of these daily reports, on the course of business adopted for a number of years, to determine whether, admitting the tariff rate meant the underwriters' rate, there was not a waiver of this rate.   The mere statement of the defendant's officer, that he did not know the rate used was not the underwriters' rate, would not conclude the question; considering his knowledge and experience with fire insurance rates, the opportunity afforded to check up the daily reports with their rates and with other circumstances in the case, the jury might well find this

provision of the contract had been waived. The error committed, if any, was in not determining the question of waiver as a matter of law in plaintiff's favor. Each acceptance of a risk by the defendant was a separate contract based upon the fact that the premium secured offered an attractive risk. This was evidenced by their right to reject policies upon receipt of the daily report and the rejection of some policies because the rates were too low. This assignment of error is overruled.

Judgment affirmed at the cost of the appellant.