## Commonwealth Mutual Fire Insurance Company *v.* Eagle Fire Insurance Company, Appellant.

Argued March 18, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Thomas F. Mount,* with him *Joseph W. Henderson* and *Rawle & Henderson,* for appellant.

*J. Webster Jones,* with him *Harvey Geiger,* for appellee.

OPINION BY DITHRICH, J., July 23, 1948:

The court below in a non-jury trial found for plaintiff in a suit on a contract of reinsurance. The facts are not in controversy, the sole question involved being the interpretation of the contract. It is a written agreement entered into on May 12, 1943, whereby the appellant as reinsurer was obligated to accept as reinsurance one-third of the first surplus in excess of the reinsured's (appellee's) net retention, but not exceeding 33⅓% of $11,250 or $3,750.

On or about August 12, 1943, plaintiff ceded to defendant and two other insurance companies a certain insurance risk under its cession No. E-1099, reinsuring plaintiff on a certain policy of insurance in the total sum of $18,000, the cession reciting "33⅓% of above line ceded to each re-insuring company." The policy was on a garage which was completely destroyed by fire.

Plaintiff settled the loss claim for $33,321.82 and claimed of defendant its proportionate share, to wit, $5,968.09. Upon defendant's refusal to pay, plaintiff entered suit for the aforesaid amount, whereupon de-

fendant paid to plaintiff the sum of $3,729.98 which it admitted to be due under its claimed limit of $3,750. The court found for plaintiff for the difference between the two amounts and from its judgment defendant has brought this appeal.

The learned judge of the court below in his adjudication said: "Undeniably, defendant received and acted upon the reinsurance certificate which it is plain to see is $18,000, . . . that is, $6,000 for each of these three reinsurers . . . The amount of reinsurance by defendant was a fact of clear perception. And undeniably, defendant received premiums on the basis of that amount of reinsurance. . . . Defendant retained premiums for over two years without word of comment, by its silence let plaintiff bask in the security of its reinsurance, and only with the advenient loss, did it call attention to its own so-called mistake of fact. The accounts between plaintiff and defendant were not an abstraction, nor were they in the dark. While without doubt there must be great faith and confidence from a relationship of the instant kind, there is not even remote reference to fraud, or imposition, or overreaching by plaintiff. . . . It was for defendant when it received the certificate of reinsurance to realize the palpable contradiction between the certificate and the reinsurance agreement and not to halt but to act positively if it wanted to stay within the limit of its liability. I need not turn my attention to the non-existing problem whether defendant could recall acceptance during the whole of the period the status of the parties remained the same; but it cannot after a loss took place and the status was altered past recall. . . . what evolved here is that defendant by its conduct waived the provision of limitation as to liability and cannot now assert it."

While the learned court based its decision on its conclusion that defendant had waived the limit of its liability, there were two other grounds on which plaintiff relied for recovery. One was that the reinsurance for

$6,000 was facultative insurance which "involves a practice between insurance companies whereby a ceding company offers special or individual risks that it decides to reinsure to a proposed reinsurer which has the free choice to accept part or all or may reject part or all of risks offered." Thompson, Reinsurance, Chapter IV, page 33. The learned court below apparently did not reject the theory of facultative insurance but merely waved it aside in favor of the theory of the waiver of limit of liability by defendant, saying in that regard: "Much has been said in brief and at bar on 'facultative insurance'. The term has its own analysis and reliance but in this case I can find no reason to be bound up with that label; when you reach for the issue, unobscured, you find that what evolved here is that defendant by its conduct waived the provision of limitation as to liability and cannot now assert it. The facts fuse to that result."

The third ground on which plaintiff relied was that if the reinsurance should not be held to be facultative but "treaty" reinsurance and therefore within the terms of the reinsurance agreement, it is protected under Article VII of the agreement which provides that it "shall not be prejudiced by any error or omission in reporting cessions . . . under this Agreement . . ." Much can be said in support of the position taken by plaintiff in view of defendant's contention that since the clear purpose of the requirement of the agreement that appellee was to make monthly reports covering all transactions, was to furnish the necessary information for adjusting accounts between the parties, and had no effect on the question of the existence or extent of liability, there was no duty upon the appellant to inform the appellee of its mistake in offering a greater risk than it was entitled to have the appellant assume. Upon the admitted facts it was appellant's own mistake of fact, and not appellee's, that led to its acceptance of an amount of reinsurance in excess of the amount for which it had agreed to become liable. It says: "It cannot be doubted that in specific

transactions the insurer who has received a premium under circumstances which would lead its assured to believe that he had coverage can retain the premium and contend otherwise. . . .

"We have no comparable situation in this case as the parties over two years prior to this transaction had entered into this contract of reinsurance which defined their respective rights and obligations." We fail to see the distinction.

Whether the reinsurance was facultative or came within the terms of the treaty agreement because of the automatic coverage provision of the latter, in either event defendant would be liable for its proportionate share of the reinsurance. If facultative, it was obligated to exercise its choice to accept part or all or to reject part or all of the risk offered; and if it was treaty reinsurance, its retention of the additional premiums over two years was properly held by the learned court below to constitute a waiver of the limit of its liability. Cf. *Exchange Mutual Fire Insurance Co. v. Mutual Fire Insurance Co. of Reading,* 59 Pa. Superior Ct. 240.

Before the case was placed at issue, defendant ruled plaintiff to show cause why all proceedings should not be stayed pending arbitration, as provided by the treaty agreement. Depositions were taken by defendant and after argument the rule was discharged without opinion. The discharge of the rule is assigned as error, but at the oral argument the assignment was not pressed. While the court below did not state on what ground it discharged the rule, it may reasonably be presumed that it was because, as admitted by defendant, the matter at issue between the parties was "not an issue of fact" but "clearly a question of law."

Since it has been held that the Arbitration Act of 1927, under which the rule in this case was taken, places an award on the same footing as the verdict of a jury and therefore mistakes of law may be rectified on appeal (*Pennsylvania Turnpike Commission v. Smith et al.,* 350

Pa. 355, 39 A. 2d 139), there would appear to be no more valid reason for referring a pure question of law to arbitrators than there would be for submitting such question to a jury. That, of course, would be error. *Cherniak v. Prudential Ins. Co. of America,* 339 Pa. 73, 14 A. 2d 334.

Judgment affirmed.