## Shannon et al. *v.* Pennsylvania Electric Company, Appellant.

Argued January 11, 1950. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*Robert V. Maine*, with him *Frank G. Smith, Frank A. Whitsett, Robert I. Reed, Harry C. James* and *Smith, Maine & Whitsett*, for appellant.

*John H. Jordan*, with him *Samuel H. Stewart*, for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 20, 1950:

This litigation grew out of a dispute between the parties concerning the interpretation of a coal lease and claims for royalties and for royalty refunds. The parties entered into an agreement of lease on December 3, 1943, which lease provided for the mining of coal underlying certain tracts of land in Huntingdon and Bedford Counties. It also contained an arbitration clause under the Act of April 25, 1927, P. L. 381, No. 248 (5 P. S. 161, et seq.). The agreement was executed by the appellees, as lessors, and by the Pennsylvania

Edison Company (now Pennsylvania Electric Company, the appellant), as lessee. The coal lease contained provision for the inclusion under its terms of the so-called "Gould" tract, under certain conditions. On July 15, 1949, the appellees caused judgment to be entered under warrant of attorney contained in the coal lease, in the Court of Common Pleas of Bedford County, in the amount of $5,156.74.

On the 18th of August, 1949, appellant obtained a rule to show cause why the judgment should not be opened and the defendant let into a defense, and why the said judgment should not be stricken off. All proceedings for the enforcement of said judgment were ordered stayed pending disposition of that rule. On the same date the court upon the petition of the appellant granted a rule on the appellees to show cause why they should not proceed with arbitration in the manner provided for in a written agreement with the Pennsylvania Edison Company and to show cause why the Judge of the Court of Common Pleas of Bedford County should not appoint an arbitrator for them as provided by the arbitration provisions of said agreement. Later both rules were discharged and this appeal followed.

On December 3, 1943, Spencer S. Shannon, Kathryn W. Shannon and Leon Falk, Jr., Trustee for Spencer S. Shannon, Jr., and Patricia Shannon, appellees, entered into a written lease (hereinafter referred to as the Shannon Lease) with the Pennsylvania Edison Company, now the Pennsylvania Electric Company, appellant, granting to the latter the mining rights to coal underlying certain tracts of land in Huntingdon and Bedford Counties. The lessee agreed to pay to the lessor a royalty of 15c for every ton of coal mined and removed from or used by the lessee on the leased prem-

ises. The lease contained a confession of judgment and also a provision for the arbitration of disputes, as set forth in the footnote.[1]

It was agreed between the parties that if the lessors "acquire by deed, lease or otherwise, within a period of five years from the date of this lease, the coal underlying certain tracts or parts of tracts known to the parties hereto as the Gould, Everett-Saxton Company, Harnish, —formerly Broad Top Coal Company, Rock Hill Coal and Iron Company and Shannon tracts or parts of tracts of land, the same, without further contract or designation herein than formal written notice by lessor to the lessee of such acquisition shall be added to and considered as part of the herein leased lands and premises."

On December 30, 1943, the Pennsylvania Edison Company entered into a written lease with William and Theresa Reed (hereinafter referred to as the Reed lease) granting to the Pennsylvania Edison Company all the mining rights in the coal underlying two tracts of land. One of them is known as Tract No. 2, or the Gould tract, and it is involved in these proceedings. The lessee agreed to pay 25¢ per net ton of coal taken from the Gould lands.

---

[1] "The Lessors and Lessee mutually covenant and agree that in case of disagreement or dispute between the Lessors and the Lessee as to interpretation or application of any of the covenants, agreements or conditions of this lease, or to performance or non-performance of the same, including disagreements as to the operation of or existence of the conditions provided for in clause 3 of the Lessee's covenants, such disagreement and disputes shall be settled from time to time by arbitration as follows: . . . [provides for the choosing of arbitrators] . . . Such awards by all or a majority of said arbitrators shall be final and conclusive on the Lessors and Lessee as to the question or questions of fact submitted to arbitration; their conclusions of law shall be subject to correction by the Court. . . . It is the intent and agreement of the parties by this arbitration clause that they are to be bound by the provisions of the Act of Assembly approved the 25th day of April 1927, P. L. 381. . . ."

On June 6, 1944, the Immaculate Conception Church of Dudley, Pa., conveyed a one-half interest in the Gould tract to Spencer S. Shannon, individually. The validity of this deed was brought before this Court (*Shannon v. William W. Reed et ux.*, 355 Pa. 628). In accordance with the decision of this Court the case was retried and the Court of Common Pleas of Huntingdon County confirmed the ½ interest of Spencer S. Shannon, subject to the right of the Pennsylvania Edison Company under the Reed lease.

The question now to be decided is whether the dispute as to Spencer S. Shannon holding his ½ interest in the Gould land as trustee for the lessor in the Shannon lease so as to bring that land within the conditions of the Shannon lease rather than the Reed lease, is one which is subject to the arbitration provided for.

The appellant contends that the dispute which has arisen between it and the appellees, whether it be regarded as a dispute on a question of law or on a question of fact, must be submitted to arbitration. The appellees contend that where the dispute is one of *law* it is not the subject of arbitration. Their reasoning in support of this is that since the court has the statutory right "to correct an award that is against the law" and had the right under the agreement to correct the arbitrator's "conclusions of law," a question of law is, therefore, not a subject of arbitration. This is the view of the court below. It is not our view and the contention made is overruled.

The appellant relies on *Commonwealth Mutual Fire Insurance Company v. Eagle Fire Insurance Company*, 163 Pa. Superior Ct. 163, 60 A. 2d 411; in which the Superior Court said: "Since it has been held that the Arbitration Act of 1927, under which the rule in this case was taken, places an award on the same footing as the verdict of a jury and therefore mistakes of law

may be rectified on appeal (Pennsylvania Turnpike Commission v. Smith et al., 350 Pa. 355, 39 A. 2d 139), there would appear to be no more valid reason for referring a pure question of law to arbitrators than there would be for submitting such question to a jury. That, of course, would be error." A reading of the opinion in that case shows that what the Superior Court said about there being no reason to submit pure questions of law to arbitration, was dictum. No question involving arbitration was argued on that appeal.

In *P. O. S. of A. Hall Ass'n v. Hartford Fire Insurance Co.*, 305 Pa. 107, 157 A. 259, we said: "It would seem to be the policy of our law, as evidenced by the Act of April 25, 1927, P. L. 381, not to permit findings of arbitrators to be set aside except in very few instances. A looser rule to overturn them than the one we are applying has been voiced in some jurisdictions. We think ours the sounder one as it makes for the integrity of awards and for the stopping of litigation. 'The general rule undoubtedly is that, unless restricted by the agreement of submission, arbitrators are the final judges of both law and fact, and an award will not be reviewed or set aside for mistake in either. And this is the reasonable view, for a contrary holding would mean that arbitration proceedings, instead of being a quick and easy mode of obtaining justice, would be merely an unnecessary step in the course of litigation, causing delay and expense, but settling nothing finally': 2 Ruling Case Law 392." See also *Goldstein et al. v. International Ladies' Garment Workers' Union et al.*, 328 Pa. 385, 196 A. 43.

The Act of April 25, 1927, P. L. 381; §11 provides: "In either of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration: . . . (d) Where the award is against the law, and is such that

had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict. The court may modify and correct the award or resubmit the matter to the arbitrators." The implication of the section quoted is that the arbitrators shall pass upon questions of law as well as upon questions of fact.

This Court said in *Bashford v. West Miami Land Co.,* 295 Pa. 560, 145 A. 678: "Where parties to an executory contract agree to submit the matter in dispute to a named individual, they are bound by their contract and cannot seek redress elsewhere until the arbitrator chosen has been discharged either by the rendition of an award or otherwise." There is nothing in that opinion which limits the "matters in dispute" to factual ones.

The Arbitration Act of 1927 would become of doubtful workability if we should hold that it is inapplicable to questions of law in any dispute which arises between the parties for it is sometimes difficult to determine whether certain disputes are questions of law or fact or both.[2]

At common law arbitration was not limited to questions of fact. Volume III, Section 16 of Blackstone's Commentaries, page 1036 states: "Arbitration is where the parties injuring and injured submit all matters in dispute, concerning any personal chattels or personal wrong, to the judgment of two or more arbitrators, who are to decide the controversy; and if they do not agree, it is usual to add, that another person be called in as umpire, to whose sole judgment it is then referred: or frequently there is only one arbitrator originally appointed. This decision, in any of these cases, is called an award. And thereby the question is as fully determined, and the right transferred or settled, as it could

---

[2] The appellant contends that there are numerous questions of fact involved in this litigation and they indicate what they are.

have been by the agreement of the parties or the judgment of a court of justice." The Act of 1927 does not limit the scope of arbitration, except as to contracts of personal service.

If arbitrators should be limited to questions of fact, they could not pass upon the admissibility of evidence [3] for such questions are questions of law. It must be borne in mind that intelligent arbitrators are entirely capable of passing upon questions of law when such questions are argued before them by opposing counsel. Furthermore, persons learned in the law are frequently appointed as arbitrators.

The judgment of the court below is reversed. The rule granted by the court below on the 18th of August, 1949 to show cause why the appellees should not proceed with arbitration in the manner provided for in the lease and to show cause why the judge of the Court of Common Pleas of Bedford County should not appoint an arbitrator is reinstated and the court below is directed to make the rule absolute. The rule granted the same day to show cause why the judgment should not be opened and the defendant let into a defense and why judgment should not be stricken off, is reinstated. The lien of the judgment is retained. Costs to abide the event.

---

[3] In *Lillard v. Casey*, 2 Bibb (Ky.) 459, it is said: "If the principle were correct, that the mistake of arbitrators upon the competency of evidence, and on other legal points involved in submissions, or supposed erroneous decisions by them, should be proper ground for resorting to a court of chancery, the most ordinary capacity must perceive that the great object of arbitrament is laid prostrate; and the valuable purposes anticipated by that mode of trial will be converted into farther delay and more expense." See also *Offut v. Proctor*, 4 Bibb (Ky.) 252, and *Burchell v. Marsh*, 17 How. (U. S.) 344, 15 L. ed. 96.