578 A.2d 21

Kenneth L. PASTORE, Appellant,

v.

ANJO CONSTRUCTION COMPANY, a Corporation, National Pipe Company, a Corporation,

v.

BENACK PLUMBING COMPANY, Appellees.

Superior Court of Pennsylvania.

Argued May 2, 1990.

Decided July 13, 1990.

J. Kerrington Lewis, Pittsburgh, for appellant.

Charles H. Alpern, Pittsburgh, for ANJO, appellee.

Before CIRILLO, President Judge, and POPOVICH and BROSKY, JJ.

POPOVICH, Judge.

This case involves an appeal from an order of the Court of Common Pleas of Allegheny County granting a motion for summary judgment in favor of the defendant/appellee (Anjo Construction Company) and appealed by the plaintiff/appellant (Kenneth L. Pastore). We affirm.

In reviewing the grant or denial of a motion for summary judgment, we are required to adhere to the same standard of review; to-wit:

> In determining whether the order [entering or denying summary judgment] is to be affirmed, we are required under Pa.R.Civ.P. 1035(b) to examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to ascertain whether the record shows that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law.

*Chiricos v. Forest Lakes Council, Boy Scouts of America,* 391 Pa.Super. 491, 493, 571 A.2d 474, 475 (1990). Under such a standard, the record evidences that on the morning of September 15, 1987, the plaintiff was directed by his foreman, John Michael Gecz, to remove some of the sand covering an eight-inch diameter plastic pipe resting ten to twelve feet below ground and intended for the transit and treatment of elephant waste in the newly constructed section of the Pittsburgh zoo. It seems that a leak had been detected by the pressurized air test performed on the pipe by Mr. Gecz, who was told to conduct such a test up to a level of one hundred pounds pressure per square inch by his employer and subcontractor on the job, Benack Plumbing Company. In turn, the general contractor (Anjo Construction Company) was hired by the City of Pittsburgh to do the on-site renovations to the zoo and had the specifications for

the pressurized test as a requirement in the building contract.

As the plaintiff was removing the sand as ordered, the pipe exploded and trapped his ankle against the wall of the trench where the pipe lay. With the use of a "digging bar", the foreman was able to pry the pipe from the plaintiff's leg. Thereafter, the plaintiff was removed from the site and treated by paramedics. Following this, the plaintiff filed a complaint, on December 6, 1986, alleging that Anjo Construction Company, who had hired his employer (Benack Plumbing Company) to test the eight-inch pipe line, engaged in negligent and careless conduct leading to his serious and permanent damages and injuries.[1]

An answer with new matter was filed by Anjo Construction Company on February 4, 1987, wherein it countered with a denial that it was negligent or careless in any manner sufficient to be labelled a proximate cause of the plaintiff's injuries. It did admit, however, that the plaintiff was the employee of Benack Plumbing Company, an independent contractor or subcontractor hired as an "expert" to perform tests on the eight-inch pipe line. In the new matter portion of its reply, Anjo Construction Company alleged that the plaintiff, as an employee of Benack Plumbing Company, was acting "under the direct supervision and instructions of ... Benack or ... representatives of Benack" when he entered the trench where the eight-inch pipe had been placed. It was alleged further that the plaintiff's claim was barred because of his conduct, in whole or in part by reason of his contributory negligence under the Pennsyl-

1. In the remaining two counts of his complaint, the plaintiff charged the manufacturer of the plastic pipe (G.W.S.M., Inc.) with selling a defectively designed product to Anjo Construction Company in violation of Restatement (Second) of Torts, § 402 A & B. Also, the plaintiff contended that the manufacturer was liable for his injuries for engaging in numerous "negligent" acts, the sum and substance of which need not be repeated here to aid us in the disposition of this appeal. This same response is applicable to the subsequent joinder of National Pipe Company, on grounds identical to G.W.S.M., Inc., as the manufacturer and/or the supplier of the pipe alleged to have been a cause of the plaintiff's injuries.

vania Comparative Negligence Act or because he voluntarily assumed the risk of injury.

By complaint of even date, Anjo Construction Company joined Benack Plumbing Company as an additional defendant. The first count sounded in negligence and averred that Benack Plumbing Company, as an independent contractor employing the plaintiff, acted in a careless and negligent manner causing the plaintiff's injuries. The second count recited a claim for a breach of contract—indemnification on the part of the additional defendant "to save and hold harmless" Anjo Construction Company from liability and damages. In particular, Article 5 of the contract (captioned "Insurance") between Anjo Construction Company (contractor) and Benack Plumbing Company (subcontractor) provided that:

> Such [sub]contractor shall indemnify and hold harmless the contractor from and against any and all payments of liabilities for payment and compensation or damages which the contractor may be required or obligated to make to or on account of subcontractor's own employees, and also indemnify and hold harmless the contractor from and against any and all losses, liabilities, suits or obligations of any kind, paid or incurred by the contractor on account of the act, neglect or default of the subcontractor.[2]

On February 26, 1987, the plaintiff filed a reply to Anjo Construction Company's new matter in which he admitted his employee status with Benack Plumbing Company but claimed that he was "acting under the direct supervision or instruction of ... Anjo Construction Company who had the

2. We would note that the Workmen's Compensation Act of Pennsylvania, specifically section 303 (77 P.S. § 481), clearly provides a third-party with the right to obtain contribution or indemnification from an injured employee's employer in the face of an express contractual undertaking. See *Gerard v. Penn Valley Constructors, Inc.*, 343 Pa.Super. 425, 495 A.2d 210 (1985). Because of the manner in which we dispose of the case at hand, we need not delve into the validity and scope of the indemnification provision of Article 5 of the contract between Anjo Construction Company and Benack Plumbing Company.

responsibility and authority to direct, manage and/or operate the construction project where the injury occurred." Further, the plaintiff denied assuming the risk of injury or participating in any negligent conduct contributing to his injuries.

Between the time the last pleading just mentioned was filed and December 5, 1988, the date Anjo Construction Company prepared a petition to amend new matter, the parties engaged in an exchange of interrogatories, the deposing of several individuals and the dismissal of G.W. S.M., Inc. as a party to the suit.

In Anjo Construction Company's December 5th petition, it alleged that following the initial complaint, "[s]ubsequent investigation and discovery ha[d] revealed the relationship of [Anjo] to plaintiff as his statutory employer", and, as a result, Anjo Construction Company sought to amend its new matter "so as to plead the defense of statutory employer as an applicable bar to liability", i.e., pursuant to section 203 of the Workmen's Compensation Act, 77 P.S. § 52.

The plaintiff's answer to the petition contended that Anjo Construction Company was not his statutory employer and that he would be prejudiced (by having to re-depose all the parties and their agents) if the amendment were allowed, and that the statute of limitations had run on the allowance of any such amendment. At the direction of the motions' judge, Anjo Construction Company filed in more detail the basis for its argument that it met the statutory employer criteria set forth under the Workmen's Compensation Act and case law interpreting the same.

In the plaintiff's reply brief to Anjo Construction Company's efforts to have itself labelled the plaintiff's statutory employer, he argued that Article 16 of the contract between Benack Plumbing Company and Anjo Construction Company specifically provided that Benack was an "independent contractor" whose "employees" were not to be construed as employees of the "owner" (City of Pittsburgh) or the "contractor" (Anjo). Additionally, the plaintiff pointed to the defendant's admission in paragraph 5 of its answer that

Benack was an independent contractor and deposition testimony of its corporate designee that "ANJO was not responsible to oversee testing procedures," [3] and further that Anjo did not "see itself in control of the construction site." Also, Anjo's citation to the "plaintiff's laborer's vague deposition testimony to avoid the force of the contract" was urged by the plaintiff as contrary to Anjo's earlier pleadings and its corporate designee's testimony.

The court below ruled in favor of Anjo Construction Company and permitted it to amend its new matter to assert a statutory employer defense. Thereafter, Anjo filed a motion for summary judgment asserting that it had established through pleadings and deposition testimony all of the elements necessary to supports its defense of "statutory employer", and, consequently, it was immune from suit for common law negligence pursuant to the Pennsylvania Workmen's Compensation Act. By order dated October 20, 1989, the court below granted Anjo's motion. This appeal followed and raises for our consideration the questions of whether Anjo could be designated as a statutory employer when it expressly provided otherwise in its contract with Benack, and whether the applicable statute of limitations barred such an amendment.[4]

With regard to the first issue proffered, it is undisputed that Article 16 of the contractual agreement between Anjo and Benack provided in relevant part that:

> The subcontractor [Benack] expressly acknowledges that he is an independent contractor, and nothing herein contained shall be construed to constitute the subcontractor ... or any of their respective ... employees, as an employee of the owner or the contractor [Anjo].

However, as stated by our Supreme Court in disregarding similar contractual language in interpreting a contract under the Workmen's Compensation Act:

3. The deposition of the referred to corporate designee is not of record.

4. The third issue appearing in the appellant's appellate brief at page 2 need not be addressed given the resolution of the first two issues against his interest.

> "Courts will not be controlled by the nomenclature the parties apply to their relationship." ... " 'Neither the form of a contract nor the name given it by the parties controls its interpretation. In determining the real character of a contract courts will always look to its purpose, rather than to the name given it by the parties. * * * The proper construction of a contract is not dependent upon any name given it by the parties, or upon any one provision, but upon the entire body of the contract and its legal effect as a whole.' "

*Capozzoli v. Stone & Webster Engineering Corp.*, 352 Pa. 183, 186–187, 42 A.2d 524, 525 (1945) (Citations omitted). Accord *Rolick v. Collins Pine Co.*, 708 F.Supp. 111, 114 (W.D.Pa.1989) (Mere labelling of someone as an independent contractor in an agreement does not determine his legal status. The court must make an independent evaluation of the terms of the contract and of all the surrounding circumstances); *Temple v. Milmont Fire Co.*, 106 Pa. Cmwlth 120, 125–27, 525 A.2d 848, 850 (1987) (Employee may have more than one employer under the Workmen's Compensation Act; all such employers under the Act are entitled to immunity in Section 303, 77 P.S. § 481). With this in mind, we are guided by the added fact that the status of "statutory employer" in the Workmen's Compensation Act is defined as follows:

> An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

Act of June 2, 1915, P.L. 736, Art. II, § 203, as amended, 77 P.S. § 52. Lastly, we add to this equation the unqualified statement of the Pennsylvania Supreme Court, in interpreting section 203 (77 P.S. § 52), that five conditions need to be satisfied to create the relationship of "statutory employer"

and, thus, avoid liability at common law. They are: (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such an employer. (3) A subcontract made by such an employer. (4) Part of the employer's regular business is entrusted to such a subcontractor. (5) An employee of such a subcontractor. See *McDonald v. Levinson Steel Co.,* 302 Pa. 287, 294–295, 153 A. 424, 426 (1930).

*McDonald* acknowledges " 'the very great care which must be exercised before allowing an employer to avoid his liability at common law by asserting that he is a statutory employer. Section 203 of the Workmen's Compensation Act, which was designed to extend benefits to workers should not be casually converted into a shield behind which negligent employers may seek refuge.' " *Travaglia v. C.H. Schwertner & Son,* 391 Pa.Super. 61, 65, 570 A.2d 513, 518 (1989), quoting *Stipanovich v. Westinghouse Electric Corp.,* 210 Pa.Super. 98, 106, 231 A.2d 894, 898 (1967).

When we examine the pleadings and some of the deposition testimony, in particular Benack's foreman's account of the chain of command on the work-site, it is obvious to this Court that the five-part *McDonald* test has been met.

As to point (1), an employer who is under contract with an owner or one in the position of owner, Anjo had agreed with the owner of the zoo, the City of Pittsburgh, to perform the needed work at the Savanna Exhibits, i.e., pressure testing the pipe to be installed at the elephant exhibit to a particular level. This work, having been subcontracted by Anjo to Benack, constituted part of its regular business entrusted to such a subcontractor, and, therefore, satisfied points (3) and (4) of the *McDonald* criteria. Next, we observe that the plaintiff's employment by Benack, with whom Anjo had subcontracted to do the work in question, complied with point (5). Lastly, point (2), whether the premises upon which the work was being done was occupied or under the control of such an employer/Anjo, necessitates a review of the pleadings in conjunction with the depositions secured.

We begin with the plaintiff's answer to Anjo's new matter, wherein he denied acting under the direct supervision or instruction of anyone other than Anjo "who had the responsibility and authority to direct, manage and/or operate the construction project where the injury occurred", and denied that the injuries were the result of any actions other than Anjo's joint and several careless and negligent conduct of "which they controlled." Paragraphs 5 and 6.

Additionally, we have the deposition testimony of John Michael Gecz, Benack's foreman overseeing the work being performed. He recalled that he was pressure testing the pipe because that is what his boss (Guy Benack), Anjo's foreman (Roger Capretta) and the City of Pittsburgh wanted. He continued that anytime he needed help on the job, Anjo's foreman sent him one of Anjo's employees. For example, if a leak occurred, it was Gecz's understanding that he "would just tell Roger and [Roger] would probably fix [it], or [Gecz] would probably fix it, depending on what [Roger] wanted to do." In other words, Anjo, once told of a leak, would decide what to do, who would repair it, "and usually [Roger] did all his own repairs." [5]

In light of the preceding, we have no hesitancy in holding that Anjo was correctly labelled as a "statutory employer" by the court below so as to afford it the ability to secure immunity from suit under the Workmen's Compensation Act. Compare *Travaglia*, supra.

Turning now to the second of the appellant's complaints on appeal, i.e., whether Anjo waived the defense of statutory employer by "steadfastly and for a period of two

5. Anjo's brief in support of its motion for summary judgment at pages 5 through 8 recited the pertinent portions of the deposition testimony of the plaintiff, Guy Benack and Robert Capretta, all of whom painted a picture of Anjo being the supervisor on the job-site and the employer for whom Benack Plumbing Company worked. However, because a "brief" is not a substitute for the transcript of the deposition testimony given under oath, we may not rely upon such a brief in making our determination. See *McCormick v. Allegheny General Hospital,* 364 Pa.Super. 210, 527 A.2d 1028 (1987). Although we could remand for a completion of the record, see Pa.R.App.P. 1926, we find sufficient *record* evidence to aid us in making our finding in favor of Anjo.

years assert[ing] the identity of independent contractor to Plaintiff's suit'', we find it no more persuasive than the initial assertion of the appellant.

It is well-established in this jurisdiction that amendments to pleadings are a matter of judicial discretion and should be liberally allowed except where surprise or prejudice will result or where the amendment is against a positive rule of law. *Posternack v. American Casualty Company of Reading,* 421 Pa. 21, 24, 218 A.2d 350, 351–352 (1966). The decision whether to allow a proposed amendment of a pleading is within the sound discretion of the court below, and that decision will not be disturbed on appeal absent an abuse of discretion. See *McKenna v. Mooney,* 388 Pa.Super. 298, 565 A.2d 495 (1989).

As correctly observed by the appellee in its brief to us at pages 13 through 14,

> The cases cited by Pastore, for the proposition that a belatedly raised defense of statutory employer is waived, are all inapposite to the facts of this case because the parties seeking to belatedly assert said defense failed to obtain *leave of Court* as required under Pa.R.C.P. 1033. [Emphasis in original]

Instantly, Anjo did seek leave of court to obtain a right to amend its new matter to assert a defense of statutory employer. As such, we perceive no abuse of discretion in permitting the amendment. Cf. *Thatcher's Drugs v. Consolidated Supermarkets, Inc.,* 391 Pa.Super. 524, 529, 571 A.2d 490, 492–494 (1990) (Even where leave of court is not obtained to file post-trial motions untimely submitted, the trial court's addressing such matter preserves it for appeal).

Specifically, the appellant protests that he is prejudiced by the lower court's allowance of the amendment to Anjo, which, obviously, led to a grant of its motion for summary judgment removing it from the law suit and future liability to him.

Albeit we empathize with the appellant, if we were to reverse the lower court's actions on the amendment ques-

tion solely because it adversely affects appellant's ability to hold Anjo accountable, either solely or jointly, for the injuries he incurred, no amendment would ever be permitted since the effect of most amendments is to benefit the amending party. Suffice it to say,

> "Prejudice that would prevent the grant of an amendment must be ... something more than a detriment to the other party 'since any amendment almost certainly will be designed to strengthen the legal position of the amending party and correspondingly to weaken the position of the adverse party.... To make the advantage sought by an amendment operate as a bar to amendment would be to destroy the right to amend except in cases when the moving party would have no reason to amend.' "

*Sands v. Forrest,* 290 Pa.Super. 48, 53, 434 A.2d 122, 125 (1981); *Cellutron Products Corp. v. Stewart,* 223 Pa.Super. 391, 394, 300 A.2d 900, 901–902 (1972).

Because we find that Anjo was entitled to seek refuge under the cloak of the Workmen's Compensation Act as a "statutory employer", we see no reason not to affirm the amendment allowance of the court below—it did what it was permitted and required to do under the established law of amendatory pleading. Compare *Mackey v. Adamski,* 286 Pa.Super. 456, 429 A.2d 28 (1981), wherein this Court reversed the lower court's refusal to strike the defendants' new matter (filed four years after suit was initiated) expressly because it was filed untimely without leave of court. *Mackey* also undermines the appellant's assertion that the court below lacked subject matter jurisdiction to permit Anjo's amendment since the case dealt with the Workmen's Compensation Act.

Order affirmed.