Larry REMALEY, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (TURNER DAIRY FARMS, INC.), Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 2004.

Decided Nov. 8, 2004.

ing Code, 42 Pa.C.S. § 9760, for time spent in an electronic home monitoring program.

William G. Cohen, New Castle, for petitioner.

Michael S. Faber, Pittsburgh, for respondent.

BEFORE: FRIEDMAN, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Larry Remaley (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied his claim for benefits for an injury to his right elbow. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) to deny and dismiss Claimant's claim petition, review petition and reinstatement petition. The WCJ found that Claimant did not prove that his right elbow injury was work-related, and the central issue in this appeal is whether the WCJ adequately explained his reasons for rejecting the testimony of Claimant's medical expert.

The background to this case is as follows. In 1985, Claimant began employment with Turner Dairy Farms, Inc. (Employer) as a driver-salesman. On April 22, 1996, he suffered a work-related injury to his left wrist. Reproduced Record at 23a (R.R. ——). Employer accepted liability for this injury, paying Claimant disability and medical benefits. On March 20, 1997, Claimant had arthroscopic surgery on his left wrist to repair a torn ligament. On April 7, 1997, Claimant returned to work in a modified-duty capacity, restricted from using his left hand.[1] Claimant continued to work at his modified-duty position until January 15, 1999, and he has not worked since.

On March 23, 2001, the WCJ approved two Compromise and Release Agreements between Claimant and Employer. The first agreement settled the April 22, 1996 injury with the payment of an amount in excess of $2,000,[2] a $761.26 payment for vacation, and $35,000 for medical benefits. The second agreement settled an injury to Claimant's right thumb that was asserted to have occurred on November 6, 1997, but was never accepted by Employer. Under the second agreement, Claimant received a lump sum payment of $20,000. Both agreements discharged Employer from all past, present and future medical and indemnity benefits, specific loss claim or any other claim relating to the April 1996 and November 1997 injuries.

On January 14, 2002, Claimant filed a review and modification petition, alleging a work-related injury in the nature of lateral epicondylitis of the right elbow. Claimant alleged an injury date of January 15, 1999, which was Claimant's last day of work. Claimant asserted that the modified-duty position he assumed after the surgery on

---

1. Several years later, Claimant had three more operations on his left wrist. Claimant's medical expert, Richard G. Katz, M.D., did these operations in January 1999, September 2000 and November 2000.

2. The terms of Claimant's direct payment was set forth in a separate agreement between Employer and Claimant's counsel.

his left wrist caused a repetitive motion injury to his right elbow because he overused his right hand. Employer answered. It denied Claimant's allegations and argued that Claimant's petition was barred by the statute of limitations[3] and by the two Compromise and Release Agreements. Subsequently, Claimant amended his petition to make it a claim petition, which amendment the WCJ approved on April 29, 2002.[4]

In support of his petition, Claimant presented his own testimony and that of Richard G. Katz, M.D., who performed the surgeries on Claimant's left wrist in 1999 and 2000. Claimant requested permission to take the testimony of Employer's claims representative, but this was not permitted by the WCJ. Employer did not present any evidence.

On February 25, 2003, the WCJ denied Claimant's petition in its entirety. The WCJ accepted Claimant's testimony[5] with respect to his right elbow symptoms but rejected Dr. Katz's testimony.[6] Claimant appealed to the Board, and on November 20, 2003, the Board affirmed the WCJ.

On appeal,[7] Claimant presents two issues. First, he contends that the WCJ erred in not including Claimant's letter-brief in the certified record forwarded to the Board and that the Board erred in not remanding the case for the inclusion of this brief. Second, Claimant contends that the WCJ capriciously disregarded the testimony of Claimant's medical expert or, in the alternative, failed to issue a reasoned decision. We address these issues *seriatim.*

Claimant's first issue is a strange one. As a result of an unpublished and unidentified opinion issued by this Court, Claim-

---

3. It was mailed on January 12, 2002, and received by the Bureau on January 14, 2002, which Claimant asserted fell within 3 years of the January 15, 1999 date of injury.

4. The WCJ amended Claimant's modification, review and reinstatement petition to a claim petition. However, in doing so, the WCJ treated the modification petition as a claim petition, and separately denied Claimant's reinstatement and review petitions. The Board agreed with Employer that the approved Compromise and Release Agreements were dispositive of the reinstatement and review petitions. It held that a commutation approved pursuant to Section 449 of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626, added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5, cannot be opened by a reinstatement or review petition.

5. The WCJ stated, in relevant part:
   Claimant credibly testified regarding his right elbow symptoms and credibly testified that he continued working light duty until January 15, 1999, when he went off work due to an unrelated condition.
   WCJ Opinion, 2/25/03, Finding of Fact No.8 (F.F.——), ¶ 2.

6. According to the WCJ,

   Dr. Katz expressed the opinion that claimant's work activities aggravated his right elbow condition because claimant's light duty employment was not within the physical restrictions set forth by Dr. Broudy. This opinion is rejected as lacking credibility inasmuch as it is not based on any evidence of record. Claimant did not testify that he thought he was required to perform activities which were in excess of the limitations set forth by Dr. Broudy.
   *Id.,* F.F. 8, ¶ 1.

7. This Court's scope of review on appeal is to determine whether any constitutional rights have been violated, whether any errors of law have been committed, or whether any necessary findings of fact are not supported by substantial evidence. 2 Pa.C.S. § 704. Review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before this Court. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe),* 571 Pa. 189, 203, 812 A.2d 478, 487 (2002).

ant's counsel routinely requests a WCJ to include letter-briefs in the record certified to the Board. Claimant alleges that in this mystery opinion, this Court refused to consider one of Petitioner's issues finding, *sua sponte*, that the issue had not been preserved. Because the letter-briefs had not been included in the certified record, counsel was unable to dispute the Court's application of the doctrine of waiver. To ward against a future occurrence of this untoward event, it is the practice of Claimant's counsel to request the WCJ to include letter-briefs in the certified record. Claimant's counsel made that request in this case, but it was refused by the WCJ.

■ As noted by the Board, although briefs are technically part of the record below, they are not evidence and are assigned no evidentiary weight on appeal. *Pastore v. Anjo Construction Company*, 396 Pa.Super. 58, 578 A.2d 21, 26 n. 5 (1990). The Board concluded that the WCJ's decision not to include the letter-briefs was harmless error because the inclusion of a letter-brief in the record is necessary only where a party asserts that an issue under consideration on appeal has been waived. Before this Court, as before the Board, Employer is addressing the merits of Claimant's appeal; indeed, even Claimant acknowledges that waiver is not an issue.

Claimant requests that we order the record supplemented with his letter brief to the WCJ, even though its addition will have no bearing on the disposition of his appeal. By asking this Court to issue a holding that letter-briefs must be included upon demand by either an employer or a claimant, he asks this Court to issue an advisory opinion. This we will not do. *See Borough of Marcus Hook v. Pennsylvania Municipal Retirement Board*, 720 A.2d 803, 804 (Pa.Cmwlth.1998) (wherein we explained that "a judicial determination that is unnecessary to decide an actual dispute constitutes an advisory opinion and has no legal effect. . . .").

■ Next, we consider Claimant's contention that the WCJ erred by capriciously disregarding the testimony of Claimant's medical expert, Dr. Katz, or, in the alternative, by failing to issue a reasoned decision. Claimant asserts that our Supreme Court's decision in *Wintermyer* is a "fractured" one requiring this Court's clarification of the capricious disregard "standard of review." Claimant's Brief at 16.

This issue requires a review of the evidence in the record. Claimant testified that after the April 1996 work-related injury to his left wrist, he continued to perform his regular job duties until September or October of 1996. At that point, Claimant was assigned to a modified-duty position. In March 1997, Claimant had surgery on his left wrist, and on April 17, 1997, he returned to work, restricted to working only with his right hand. On January 22, 1998, Claimant was directed by his physician not to lift more than 10 pounds with either arm. Claimant continued to work at this modified-duty position up until January 15, 1999, when he left to prepare for additional surgery to his left wrist.

Claimant began to notice pain in his right elbow beginning in June of 1997, and it continued through January 15, 1999.[8] Claimant testified that following January 15, 1999, his right elbow condition prevent-

---

8. This was Claimant's last day of work before taking leave for the surgery to his left wrist by Dr. Katz. Claimant does not assert that something happened on January 15, 1999. Because it was his last day of work, it became the date of injury, which is appropriate in a repetitive trauma case. *See, e.g., Roberts v. Workers' Compensation Appeal Board (Double R Enterprises)*, 719 A.2d 847, 850 (Pa.Cmwlth. 1998).

ed his return to either a full-duty or a light-duty position with Employer. On cross-examination, Claimant acknowledged that the Compromise and Release Agreement of March 2001 covered his right thumb and left wrist. Claimant further acknowledged that when he went off work in January 1999, it was to undergo surgery to his left wrist.

Claimant presented the testimony of Dr. Katz, who is board certified in plastic surgery with a certificate of added qualification in hand surgery. Dr. Katz operated on Claimant's left wrist on January 19, 1999, September 12, 2000 and in November 2000.[9] Dr. Katz diagnosed Claimant with chronic right lateral epicondylitis. Based upon a 1988 medical report, Dr. Katz opined that Claimant's right elbow condition was caused by moving milk cans at work; this condition was also the result of an incident on April 13, 1998, when Claimant "banged" his right elbow while working in the cab of a truck at work. Dr. Katz further opined that Claimant aggravated his right elbow condition by continuing to work up to January 15, 1999, because his work required him to violate the ten-pound lifting restrictions directed by a prior treating physician, Arnold S. Broudy, M.D.

On cross-examination, Dr. Katz acknowledged that Dr. Broudy did not change Claimant's work restrictions despite Claimant's 1988 right elbow problem. Dr. Katz also acknowledged that he examined Claimant's right elbow in March 1998 but did not look at it again until March 2002. Dr. Katz further acknowledged that he did not order any restrictions on Claimant's

activities as a result of the right lateral epicondylitis until March 2002.

■ The WCJ accepted Claimant's testimony with respect to his right elbow symptoms, but he rejected Dr. Katz's testimony that Claimant's work-related activities aggravated his right elbow condition. The WCJ is the ultimate determiner of credibility. *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board (Krawczynski)*, 9 Pa.Cmwlth. 176, 305 A.2d 757, 760 (1973). The WCJ is free to accept, in whole or in part, the testimony of any witness, including medical witnesses. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa.Cmwlth. 1995).

■ Our Supreme Court has held that review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court.[10] *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487. A capricious disregard of evidence is a "willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Newcomer Products v. Workers' Compensation Appeal Board (Irvin)*, 826 A.2d 69, 74 (Pa.Cmwlth.2003) (citations omitted).

After review of the record, we are unable to conclude that the WCJ deliberately disregarded competent evidence in rejecting the testimony of Dr. Katz. To the contrary, the WCJ carefully explained his rationale for finding Dr. Katz incredible. First, the WCJ pointed out that Dr. Katz's opinion that Claimant's work activities ex-

---

9. Dr. Katz's deposition does not specify the day, only the month and year, of his final surgery to Claimant's left wrist.

10. We disagree with Claimant that capricious disregard of evidence is a "standard of review;" it is a type of legal error that can cause a reversal of a tribunal's adjudication. *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487.

ceeded his medical restrictions was not supported by other evidence in the record. Not even Claimant testified that his light-duty position required that he violate Dr. Broudy's lifting restrictions. Second, the WCJ viewed Dr. Katz's testimony as inconsistent. Dr. Katz testified that Claimant could not perform the light-duty work he was performing on January 15, 1999, but then later stated that Claimant could do that work. Third, Dr. Katz was unable to describe how Claimant's right elbow injury resulted either from his light-duty assignment or from the 1988 incident. Fourth, Dr. Katz did not order work restrictions as a result of Claimant's right elbow condition until March 4, 2002.

The record confirms the accuracy of the WCJ's stated reasons for disbelieving Dr. Katz. While Claimant may disagree with the inferences drawn by the WCJ from the evidence, we cannot say that he engaged in a material misstatement of the evidence or relied on legally insupportable grounds when he refused to credit Dr. Katz's opinions. The WCJ simply evaluated Claimant's evidence and made the requisite credibility determinations [11] as he is entitled to do. *Universal Cyclops*. Consequently, Claimant was left without the necessary medical evidence needed to meet his burden of proof on his claim petition.[12] *See Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993); *SKF USA, Inc. v.*

*Workers' Compensation Appeal Board (Smalls)*, 728 A.2d 385 (Pa.Cmwlth.1999).

Alternatively, Claimant contends that the WCJ did not issue a reasoned decision in accordance with Section 422(a) of the Act, 77 P.S. § 834. It provides in relevant part as follows:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.... The adjudication shall provide the basis for meaningful appellate review.

The Section 422(a) reasoned decision requirement was modified in 1996 to add the following language:

> When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection.

Section 422(a) of the Act, 77 P.S. § 834. In *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 828 A.2d 1043 (2003), our Supreme Court interpreted the meaning of the first

---

11. We disagree with Claimant's argument that his testimony was found entirely credible by the WCJ. The WCJ identified two credible points in Claimant's testimony: (1) his elbow hurt and (2) he last worked January 15, 1999. It was not necessary for the WCJ to recite expressly that he did not find the rest of Claimant's testimony incredible. This is the necessary implication of the WCJ's narrow credibility finding, as is expressed in the principle *expressio unius est exclusio alterius* ("to express one thing is to exclude the other").

12. Claimant also complains that the WCJ rejected his evidence. However, the WCJ found his testimony credible. The WCJ just rejected his medical testimony, which was crucial to his burden in this type of claim petition proceeding. We also disagree that the WCJ should have at least suspended benefits until March 4, 2002, as Claimant maintains, since the WCJ, in rejecting Dr. Katz's testimony, determined that Claimant failed to sustain his burden of proving a work-related injury in the nature of right lateral epicondylitis.

sentence of the 1996 amendment, dealing with conflicting evidence.[13] In this case, we consider the second sentence of the above-quoted 1996 amendment, dealing with a situation where one party's evidence is uncontroverted.

Claimant offers a broad interpretation of the WCJ's statutory duty to identify the evidence and explain his reasons for its rejection. Claimant argues that the General Assembly has mandated a form of review

> unknown elsewhere in Pennsylvania appellate procedure or administrative law. This is likewise a form of review normally resisted by appellate courts. Thus, notwithstanding the instinct of an appellate tribunal to defer to the fact-finder, this is simply not what is mandated, at least in the case of uncontroverted evidence in a worker's compensation case.

Claimant's Brief at 24. We disagree with Claimant's premise that appellate court judges defer to the factfinder by employing "instinct;" in truth, it requires discipline. However, this is only one flaw in Claimant's proffered interpretation of the 1996 amendment to the Act.

■ Section 422(a) of the Act requires the WCJ to identify the uncontroverted evidence and to "explain adequately the reasons for its rejection." 77 P.S. § 834. The WCJ's decision must be tested against this standard during appellate review, but this does not mean that the factfinder is not entitled to deference. Claimant's interpretation of Section 422(a) suggests that appellate courts would be free to make findings of fact where only one party presents evidence. We disagree that the legislature intended to effect such a fundamental shift in factfinding responsibility.

■ The WCJ identified the uncontroverted evidence and adequately explained his reasons for rejecting it. This satisfies the Section 422(a) standard for a reasoned decision in a case where, as here, only one party has presented evidence. Claimant would have this Court issue a ruling that reduces a claimant's burden of proof whenever an employer does not present a rebuttal case. Claimant's proffered interpretation of Section 422(a) of the Act would require a broad reach from the actual language of the Act, and we decline to so extend ourselves.

For these reasons, we affirm the Board.

### ORDER

AND NOW, this 8th day of November, 2004, the adjudication of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

---

13. The *Daniels* opinion itself notes the issue to be decided as:
> On the salient question presented here—*i.e.,* the contours of the "reasoned decision" re-

quirement set forth in Section 422(a) of the Act in a case where the WCJ is presented with conflicting evidence....
574 Pa. at 66, 828 A.2d at 1046.