J-A08016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARC MATRANGA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| U-HAUL COMPANY OF | : | No. 1067 EDA 2017 |
| PENNSYLVANIA | : | |

Appeal from the Order Entered February 15, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): March Term, 2015, No. 04019

BEFORE:   PANELLA, J., LAZARUS, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 22, 2018**

Marc Matranga appeals from the trial court's order granting summary judgment in favor of Appellee, U-Haul Company of Pennsylvania (U-Haul), and dismissing Matranga's complaint with prejudice.   After careful review, we affirm.

On March 31, 2015, Matranga instituted the underlying negligence action against U-Haul after he was injured in a July 2013 forklift accident.   At the time of the accident, Matranga was working as a welder helper at the Falls Manufacturing Company (Facility) in Fairless Hills, one of U-Haul's production facilities.   The Facility manufactures parts for U-Haul trailers.   Matranga was employed by McGrath Technical Staffing, Inc., a staffing agency.   McGrath would hire workers and assign them to various temporary positions to perform work at the Facility with its client, U-Haul.   In 2013, McGrath executed a

_____

* Retired Senior Judge assigned to the Superior Court.

Staffing Services Contract (Contract) with U-Haul that included a waiver provision wherein Matranga waived his right to pursue a claim against U-Haul for any workplace injuries. The Contract also specified that "All workers assigned to U-Haul are employees of [McGrath] and that such workers are not employees of U-Haul." 2013 Staffing Services Contract, 4/9/13, at ¶ 2. On the date of the accident, Matranga's job was to load parts onto a cart, push them to a welding station, and then unload the parts.

At the time of the accident, Matranga was holding an electrical line out of the way of a forklift being operated by U-Haul employee, Jose Molina. Molina crashed the forklift into a stack of steel frames, which then fell over onto Matranga. Matranga suffered serious and permanent injuries from the accident, including: a tear of his labrum; pelvic injury; disc protrusion; lumbar sprain and strain; and back and hip pain. As a result of the injuries, Matranga alleged he had suffered a significant loss of wages and income, suffered permanent impairment, and will continue to incur medical expenses related to his treatment.

On September 6, 2016, U-Haul filed a motion for summary judgment claiming that it was not liable for Matranga's injuries based on the defenses of statutory employer, co-employee, borrowed servant and contractual waiver/release. Matranga filed a response to the motion, claiming that he was specifically designated as a McGrath employee under the parties' contract, he was functionally an employee of McGrath because the staffing service exercised control over him and his work, and that any contractual waiver was

ineffective. On February 15, 2017, the trial court entered its order granting U-Haul's motion and dismissing Matranga's complaint with prejudice. This timely appeal follows.[1] On appeal, Matranga presents the following issues for our consideration:

> 1. Whether U-Haul should be denied status as the statutory employer of Marc Matranga, where U-Haul is unable to establish the factors for statutory employment status under the *McDonald*[*v. Levinson Steel Co.*, 153 A. 424 (Pa. 1930)] test, and where both the contract between U-Haul and Mr. Matranga's employer, McGrath, and the evidence of record clearly demonstrate that McGrath, not U-Haul, was Mr. Matranga's employer and both had the right of control and, in fact, exercised such control, over Mr. Matranga and his work?
>
> 2. Whether U-Haul should be denied immunity on the basis of the alleged co-employee status of Marc Matranga and Jose Molina, where the evidence of record clearly demonstrates that Mr. Matranga was an employee of, and controlled and supervised by, McGrath, and Mr. Molina was an employee of, and controlled and supervised by, U-Haul, each performing different work functions under separate control?
>
> 3. Whether U-Haul's contention that Marc Matranga is a borrowed servant must fail, where the contract between U–Haul and McGrath expressly provides that Mr. Matranga was an employee of McGrath, and where the contract and evidence of record clearly demonstrate that McGrath had the right of control and, in fact, exercised such control, over Mr. Matranga and his work?
>
> 4. Whether U-Haul's contention that Marc Matranga contractually waived and released all claims against U-Haul must fail, where the document relied upon by U-Haul was not the same document which Mr. Matranga was given and signed, U-Haul was not the party purportedly released in the document, Mr. Matranga's signature to this contract of adhesion was procured under duress,

---

[1] Matranga filed a motion for reconsideration on February 24, 2017, which the trial court denied as moot, on March 22, 2017, once he filed his timely notice of appeal on March 13, 2017.

and U-Haul failed to plead waiver of release as an affirmative defense in its answer to the complaint?

Appellant's Brief at 6-7.

Our standard of review in cases of summary judgment is well settled. This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. *Merriweather v. Philadelphia Newspapers, Inc.*, 684 A.2d 137, 140 (Pa. Super. 1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.*

Matranga first claims that U-Haul was not his statutory employer because it did not prove the elements of such a theory and because the parties' contract and the evidence of record clearly demonstrate that McGrath was Matranga's employer, having both the right of control and actually exercising such control over his work.

Pennsylvania's Workers' Compensation Act (the Act) provides the exclusive remedy for employees seeking to recover from their employers for work-related injuries. *See* 77 P.S. § 481. Under the Act, the term "employer"

- 4 -

also refers to those who qualify as a statutory employer. *Id.* at § 52. A statutory employer is defined under the Act as:

> An employer who permits the entry upon the premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

*Id.* "A statutory employer is a master who is not a contractual or [a] common-law one, but is made one by the [Workers' Compensation] Act." *Shamis v. Moon*, 81 A.3d 962, 969 (Pa. Super. 2013), citing *McDonald v. Levinson Steel Co.*, 153 A. 424, 425 (Pa. 1930).

In *McDonald*, our Supreme Court established the test for determining whether a party qualifies as a statutory employer under the Act.[2] According to *McDonald*, a party must establish the following elements to qualify as a statutory employer:  (1) an employer who is under contract with an owner or one in the position of an owner; (2) the premises is occupied by or under the control of such employer; (3) a subcontract made by such employer; (4) part of the employer's regular business entrusted to such subcontractor; and (5) an employee of such subcontractor. *Kelly v. Thackray Crane Rental, Inc.*, 874 A.2d 649, 655 (Pa. Super. 2005).

Instantly, the trial court found that U-Haul was Matranga's statutory employer, where it concluded that:  U-Haul had a contract with McGrath,

---

[2] 77 P.S. § 203, as amended 77 P.S. § 52 (Employers' liability to employe of employe or contractor permitted to enter upon premises).

Matranga's employer; the Facility was occupied by U-Haul; there was a subcontract made by U-Haul; part of U-Haul's regular business was entrusted to McGrath; and Matranga was an employee of McGrath. *See* Affidavit of Michael P. Wiley, CEO of McGrath Technical Staffing, Inc., 7/27/16, at ¶ 2 (averring that in 2013 McGrath contracted with U-Haul to provide its workers for assignment at U-Haul's Fairless Hills facility on as-needed basis and for duration to be determined solely by U-Haul).

John Kathrins, a "lead man" in the welding department at the Facility, stated in his deposition that his day-to-day duties consisted of: setting the workers up on jobs, teaching them the jobs, making sure the job at hand was being done correctly, making sure the workers have all their parts, making sure the parts are correct, and making sure any needed fixtures are at the stations. Deposition of John Kathrins, 5/20/16, at 11. Kathrins also stated that U-Haul would have made the decisions regarding what assignments Matranga, as a laborer, would have throughout his shift, *id.* at 34, and that McGrath was not "involved in any of the day-to-day control over the temporary workers in [the] welding department." *Id.* at 35-36. Finally, Matranga stated in his affidavit that his U-Haul supervisor would meet with the welders daily, discuss what they were going to make in a given day, what trail they were making, and how many pieces had to be completed. *See* Affidavit of Marc Matranga, 4/20/16, at 149-152. McGrath was not responsible for training any of the welders. *Id.* at 197.

Under such circumstances, we agree with the trial court that U-Haul was Matranga's statutory employer. **See Kelly**, **supra** at 657 (employer effectively occupies premises for purposes of section 52 of the Act when its supervisor is present at site on daily basis and when its employees are regularly present on premises at same time as subcontractor's employees); **see also Wilkinson v. K-Mart**, 603 A.2d 659 (Pa. Super. 1992) (plaintiff, a truck driver, qualified as K-Mart's statutory employee where: plaintiff's direct employer had contract with K-Mart to supply it truck drivers; K-Mart reserved right to dispatch vehicle given to plaintiff to drive and to direct plaintiff in day-to-day operations of vehicle; and K-Mart not only controlled the work to be done, but also controlled manner of performance by selecting the routes to be used).[3]

Matranga next asserts that because the Contract specified that McGrath was his employer and that he was not an employee of U-Haul, he cannot be considered to be U-Haul's statutory employee and is not precluded in bringing a negligence action against U-Haul.[4] We disagree.

---

[3] Having determined that U-Haul was Matranga's statutory employer, Matranga is also barred from pursuing a tort action against his co-employee, U-Haul worker Jose Molina. **See** 77 P.S. § 72 (person not liable to anyone at common law on account of disability for any act or omission occurring while he or she in same employ as person disabled except for intentional wrong).

[4] Because we have concluded that U-Haul was Matranga's statutory employer, there is no need to further review the merits of his remaining claims that involve the alternative legal bases the court relied on in granting summary judgment in U-Haul's favor. However, to stave off any further appeals in the matter, we have decided to review the issues.

In **Pastore v. Anjo Consr. Co.**, 578 A.2d 21 (Pa. Super. 1990), our Court explained that we are not controlled by the names that parties use in a contract to describe their relationship. Rather, courts must look to the entire body of the contract and its purpose to determine the legal effect. **Id.** at 25 (quoting **Capozzoli v. Stone & Webster Engineering Corp.**, 42 A.2d 524, 525 (Pa. 1945)). Here, the evidence clearly showed that there was a statutory employer-employee relationship between U-Haul and Matranga; the language of the parties' Contract does not change that legal conclusion.

The court also determined that Matranga was a borrowed servant where U-Haul controlled the work he performed. The test for determining the identity of the "true" master when a servant has been loaned to another focuses on the right of control:

> The crucial test in determining whether a servant furnished by one person to another becomes the employe of the person to whom he is loaned is *whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it.*
>
> A servant is the employe of the person who has the *right* of controlling the manner of his performance of the work, irrespective of whether he actually exercises that control or not.

**Wilkinson v. K-Mart**, 603 A.2d 659, 661 (Pa. Super. 1992) (citations omitted) (emphasis added and in original).

Specifically, the evidence showed that: U-Haul chose the departments to which Matranga was assigned; Matranga reported to floor supervisors, who were U-Haul employees, with work concerns, when he ran out of work or when

he left his workstation; and U-Haul employees assigned Matranga with tasks, trained Matranga how to perform them, and reviewed Matranga's work. Matranga stated that the plant manager would have a daily meeting every morning with the welding department workers to discuss what they were making, which trailer parts they were making, and how many pieces had to be completed. The manager would then follow up during the day and give the welders the specific details as to what was actually being made or expected. When Matranga first started working in the welding department, U-Haul employee Jose Molina would direct him in his duties, with the general guidance of U-Haul welding supervisor, John Cathy. *See* Affidavit of Marc Matranga, 4/20/16, at 170-73; 189. McGrath was not responsible for training any of the welders. *Id.* at 197. Under such circumstances, we agree with the trial court's conclusion that Matranga was a borrowed servant of U-Haul.

Finally, the trial court found that Matranga had contractually waived his claims against U-Haul based upon a provision in the parties' Contract, which provided:

**Limitation of Liability.**

12. Limitation of Liability. **To the extent permitted by law, you**, on your own behalf and on behalf of anyone claiming by or through you, **waive any and all right you have, or may have, to claim or assert a claim, suit, action or demand of any kind, nature or description, including without limitation, claims, suits, actions or demands for personal injury or death whether arising in tort, contract or otherwise, against Client or Client's customers, agents, officers, directors, or employees, resulting from or arising directly or indirectly out of your employment with McGrath Systems. You**

**recognize and agree that McGrath Systems provides workers' compensation coverage for such things as on-the-job injuries** or occupational diseases **incurred while on assignment for McGrath Systems, and you agree to look solely to McGrath Systems and/or its insurer for damages and/or expenses for such injury, illness or other claims incurred while on assignment.** You agree to notify McGrath Systems if you believe that there are any unsafe conditions at the Client worksite or facility. In the event of a workplace injury that does not permit you to return to full duty, McGrath Systems will make modified duty positions available that meet any Physician's restrictions, which may or may not be at your normal place of employment.

Parties' Contract, 4/9/13, at ¶ 12 (emphasis added).

Matranga claims that he did not contractually waive and release all claims against U-Haul based upon the above-quoted language from the parties' contract. Specifically, he asserts that the contract was not the same one that he was given and signed, that U-Haul was not the party released in the document, that his signature on the contract was procured under duress, and that U-Haul failed to plead waiver of release as an affirmative defense in its answer to the complaint. We disagree.

First, we note that U-Haul did raise the defense of waiver generally in its new matter. *See* U-Haul Answer & New Matter, 6/16/15, at ¶ 58 ("Plaintiff's claims may be barred by . . . waiver."). Under such circumstances, we decline to find that U-Haul has waived this defense. *See* Pa.R.C.P. 126 (favoring liberal construction of rules to resolve issues in "a just, speedy, and inexpensive manner").

Next, Matranga claims that he was "never afforded the opportunity to 'contemplate' the purported Agreement and release as he was never provided

with a copy of the Agreement . . . [and] was given only a signature page that U-Haul purports belongs to the Agreement and was never presented with the entire document." Appellant's Brief, at 50-51. Instantly, Matranga admitted he signed the Contract. While he stated that he felt rushed and may not have reviewed the entire document before signing it, this does not render the agreement unenforceable. **See Toro v. Fitness Int'l LLC.**, 150 A.3d 968 (Pa. Super 2016) (failure to read agreement before signing it does not render agreement either invalid or unenforceable). To be valid, an exculpatory clause, such as the instant waiver clause, must meet three conditions: (1) it must not contravene public policy; (2) the contract must be between persons relating entirely to their own private affairs; and (3) each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion. **Chepkevich v. Hidden Valley Resort, L.P.**, 2 A.3d 1174, 1189 (Pa. 2010).

Here, Matranga has not elicited any evidence showing that the **Chepkevich** conditions were not present in the instant case. Matranga averred that he had the opportunity to ask questions about the Contract and, in fact, did ask questions prior to signing it. Moreover, it was Matranga's duty to read the contract before signing it; it is well-established that the failure to read some or all of a contract does not justify nullifying the agreement. **Standard Venetian Blind Co. v. American Emp. Ins. Co.**, 469 A.2d 563 (Pa. 1983); **accord Seaton v. East Windsor Speedway, Inc.**, 582 A.2d 1380 (Pa. Super. 1990) (where plaintiff claimed he did not know and was not told he was signing a release, Court found plaintiff signed release voluntarily,

where he was not compelled to sign it, and there was no evidence of fraud or issue of trust between parties to contract). Matranga has not proven fraud, issues of mistrust among the parties, or that he was forced to sign the Contract. Under such circumstances, we fail to find that the Contract was unenforceable as it relates to Matranga.

To the extent that Matranga claims that the Facility, not U-Haul, was the party released in the document, we disagree. The Contract clearly states that it was made "by and between Falls Manufacturing Incorporated, (**hereinafter "U-Haul"**) and McGrath Solutions (hereinafter "Staffing Agency[.]") 2013 Staffing Services Contract, 4/9/13, at 1 (emphasis added). The remainder of the document references U-Haul as the contracting party; the Facility is a division of U-Haul. **See** U-Haul Answer & New Matter, 6/16/15, at ¶ 3 (U-Haul "operates, manages, controls and maintains the [Fairless Hills] premises."); **see also** Affidavit of Michael P. Wiley of McGrath Technical Staffing Inc., 7/27/16, at ¶ 2 (McGrath contracted with U-Haul to provide workers for assignment at U-Haul's production facility in Fairless Hills, PA); Affidavit of William B. Hawthorne, President of Falls Mfg. Co., 5/23/16, at ¶ 1 (averring that Falls Manufacturing Company is a division of U-Haul Co. of Pennsylvania).

Order affirmed.

Judge Panella joins this Memorandum.

Judge Strassburger files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/18