## Cherniak, by Gdn., Appellant, *v.* Prudential Insurance Company of America.

Argued May 13, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Cecil P. Harvey,* for appellant.

*Kendall H. Shoyer,* with him *Frederick J. Shoyer* and *Andrew C. Dana,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 24, 1940:

This record presents the question whether the plaintiff in an action in assumpsit can take a voluntary nonsuit after the trial judge announces: "I shall have to direct a verdict."

Plaintiff as guardian of the insured brought an action on a policy of life insurance containing provisions for disability benefits in the event that the insured should become totally and permanently disabled while the policy was in full force and effect. At the trial each side introduced evidence, both oral and written, and at its close both sides submitted points for binding instructions. The trial judge requested oral argument on the points and at the close of these arguments made the statement above quoted. Counsel for plaintiff then said: "I will ask for a voluntary non-suit." The court replied: "It is too late." Then he said to the jury: "I direct you to bring in a verdict for the defendant." The jury thereupon returned a verdict for defendant. The matter was heard before the court in banc and it was held that the motion for a voluntary non-suit was properly overruled.

Section 2 of the Act of March 28, 1814, 6 Smith's Laws 208, provides that "whenever on the trial of any cause the jury shall be ready to give in their verdict, the plaintiff shall not be called nor shall he then be permitted to suffer a nonsuit." The Act of April 16, 1903, P. L. 216, provides as follows: "The plaintiff shall not be permitted to suffer a voluntary nonsuit after the jury have agreed upon their verdict, sealed the same and separated, unless such nonsuit shall be specially allowed by the court for cause shown."

The question before us is whether or not plaintiff's motion for a nonsuit was too late. Plaintiff contends

that it was not, because the time had *not* arrived when "the jury shall be ready to give in their verdict." Defendant contends that the motion *was* too late, because when the trial judge announced his conclusion, the rendering of the verdict by the jury was a mere formal act to carry out the court's determination of the case and that therefore within the meaning of the statute first above quoted, i. e., the jury "was ready to give in their verdict" at the time the motion for a nonsuit was made.

Blackstone defines a trial to be "the examination of the matter of fact in issue": 3 Bl. 330. "A trial is an examination before a competent tribunal, according to the law of the land, of the facts or law or both, put in issue in a cause, for the purpose of determining such issue": Bassett's Cr. Pl. 327.

It is well settled that if the determination of an issue on trial rests on a question of law, the court determines it. In the instant case, each opposing litigant contended that he was entitled to binding instructions, i. e., that the issue was one of law. The trial judge held likewise and announced that the issue had been determined in his mind and that he would "direct a verdict [for the defendant]". Having reached that conclusion, the jury had no further function to perform except to do its formal part in registering the will of the trial judge. Under the law and procedure in Pennsylvania the jurors were then "ready to give in their verdict," for it is the duty of a jury to carry out promptly the directions of the trial judge when, as here, he acts within the scope of his authority. The issue having resolved itself into one of law and not of fact, the jury's function ceases to be deliberative and becomes ministerial. It was held in *Pardee v. Orvis*, 103 Pa. 451, that a trial judge acted within his rights in refusing to receive a jury's verdict in favor of one party and in sending the jury back with a direction to find for the other party. This court there said: "It would have been more regular to have given the jury binding instructions before sending them out,

yet it was not substantial error if he did so instruct them when he discovered they were about to render a verdict contrary to the law of the case." See also *Whiting & Co. v. Lake,* 91 Pa. 349.

Should jurors refuse to carry out the instructions of a trial judge in a matter in which the court had jurisdiction, they would be guilty of contempt of court. See *Cahill v. Chicago, etc., Railroad Co.,* 74 Fed. 285, and *Albanell v. Cobian,* 9 Porto Rico, Fed. 13. There is no doubt that if a jury refused to return a verdict as directed by the trial judge acting within the scope of his authority, the issue having become one of law, the judge could direct his agent, the clerk of the court, to enter the verdict he had directed the recusant jury to return.

It is true that the motion for a voluntary nonsuit was made before the court had formally directed a verdict for the defendant, but the court, having announced that it would "direct a verdict," the formal instruction followed as a matter of course upon the judicial conclusion already reached. We must hold that since it is a jury's duty to return a verdict as directed, the jury are in the eyes of the law "ready to give in their verdict" when they are judicially directed to return a certain verdict. We further decide that when the trial judge declares, as here, that "I shall have to direct a verdict," it would be absurd to hold that in the instant that elapses between the judge's declaration as to what direction he has decided to give and his actual giving of that direction, a plaintiff may take a voluntary nonsuit. This would reduce the trial of cases, in this feature of them at least, to a mere game of verbal "base running."

The appellant cites the case of *McLughan v. Bovard,* 4 Watts 308, 316, in which Chief Justice Gibson, speaking for this court, said: "The right of the plaintiff [to take a nonsuit] ceases only when in reply to the usual inquiry of the prothonotary they have officially announced their readiness to the court [to return a verdict]". That was a case where no instruction or inti-

mation of an instruction to return a verdict for the defendant had been given by the trial judge. The jury's deliberative functions had not been suspended by the action of the trial judge. In that case plaintiff had no means of knowing until the verdict was announced, what it was going to be. In the instant case, plaintiff knew when the trial judge made the remark above quoted that the issue, which both parties by their respective motions for binding instructions had conceded to be one of law, had been decided adversely to him and that nothing remained to be done except to register in due form the determination reached. It would manifestly be contrary to the purpose and spirit of the Act of 1814 to hold that after the issue had then been *decided* against a plaintiff, it is still not too late for him to "suffer a non-suit." It would really be a verbal misnomer to say that a plaintiff "suffers" a nonsuit after he knows that the issue has actually been decided against him. At *that stage* of the proceedings a nonsuit would be not an infliction but a boon to the plaintiff, as it would insure him another trial after he has already lost the first one.

The question now before us for the first time has arisen in other jurisdictions, and there are many judicial decisions in accord with the one we have reached in this case. In *Bee Bldg. Co. v. Dalton,* 68 Neb. 38, a jury was empanelled to try the issues and the plaintiff having submitted his case, the defendant moved the court to direct a verdict in its favor. The motion was sustained but before the peremptory instruction was given, the plaintiff asked that the case be dismissed without prejudice, and his request was granted by the trial court. The Supreme Court of Nebraska held this to be error, saying: "The contention of counsel for plaintiff is that the trial was to the jury and that there could be no submission of the case until the jury had complete authority to deal with it. This argument is plausible, but we cannot believe that it is sound. It is true, a jury was empanelled, but it is equally true that the case was

tried by the court, and not by the jury. The case was submitted on an issue of law and the determination of that issue eliminated the jury and ended the controversy. After it had been adjudged that the plaintiff had no case, and that there was no issue of fact to be decided, the direction, reception and recording of a verdict would have been mere ceremonial acts. These acts would, we know, be in accordance with conventional procedure; they would satisfy the requirements of judicial formalism, but they would be useless and idle. . . . To direct a jury to return a verdict in favor of the defendant would have been to command the triers of fact to ratify a decision already made by the court upon a question of law. When the legislature, in section 430, spoke of 'the final submission of the case to the jury,' it must have had in mind the submission of a disputed question which might be resolved by the jury in favor of either party. In this case there was no issue of fact; the court so decided. . . . In every such case, the judgment rests not on a decision of a question of fact, but wholly and exclusively upon the decision of a question of law." See also *C. R. I & P. Ry. v. Reynolds,* 12 Pac. (2d) 208.

In *St. Joseph D. & C. R. R. v. Dryden,* 17 Kansas 278, the Supreme Court of Kansas, in an opinion by Justice Brewer (afterwards a member of the Supreme Court of the United States) held: "Where a demurrer to the evidence is sustained, the case is ready to judgment. It has been finally submitted to the court, and the plaintiff has no more right to dismiss then than he has after a verdict is returned. The case is decided, and the plaintiff has no right to avoid that decision by a dismissal." To permit a party to dismiss under such circumstances is, in substance, to grant him a new trial after he has been fairly defeated and to deprive his adversary of the fruits of a fairly won victory.

In *Dobkin v. Dittmers,* 76 N. J. L. 235, 69 A. 1013, it was held that after the court had passed upon the motion for a directed verdict and instructed the jury

to return a verdict for defendant, it was too late for plaintiff to take a nonsuit. See also *Greenfield v. Cary*, 70 N. J. L. 613, 57 A. 269.

The only Pennsylvania cases, cited by appellant, holding contrary to these cases from other jurisdictions are cases in which there was no peremptory instruction for the defendant either given or intimated. The issues, as in *James et al. v. Bream et al.*, 263 Pa. 305, 106 A. 722, and *Axelrod et al. v. Howell*, 328 Pa. 297, 195 A. 879, cited by appellant, were factual, and in those cases it was held by this court that a plaintiff could suffer a voluntary nonsuit at any time before the jury is ready to render its verdict. In the instant case we hold that the jury was so ready when the trial judge announced his determination of the issue of law and his intention to direct a verdict for the defendant.

The court below sitting in banc aptly said: "The [trial] court effectively announced its decision. There was nothing for the jury to do but register the court's decree and it was in readiness to do so. This was no more than a mere ceremonial act not necessary to a decision of the issue."

The judgment is affirmed.