## Knepper, Appellant, *v.* Curfman et al.

Argued October 24, 1945. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*I. Newton Taylor,* for appellant.

*C. Jewett Henry,* for appellee, A. C. Book.

OPINION BY DITHRICH, J., December 14, 1945:

Elmer W. Knepper sustained serious injuries when he was accidentally struck by a falling tree while engaged in the employment of cutting timber. His claim petition names as his employers both C. A. Curfman and A. C. Book. The referee found as a fact that he was employed by Curfman alone, and awarded compensation against Curfman. The board arrived at a different conclusion, vacated the award against Curfman, and awarded compensation against Book as claimant's statutory employer. Holding that the board's award against Book was not based upon competent evidence, the court of common pleas reversed it and entered judgment for the claimant against Curfman. From the judgment against Curfman, alone and uninsured, claimant appeals.

When the claimant first started to work about December 15, 1942, he worked for Curfman and Book, and Oscar Book, the defendant's son, was the boss or foreman on the job. He was hired by Oscar Book and paid by checks drawn on Oscar Book's account. During the latter part of February, 1943, the sawmill was shut down and Book discontinued his operations. Work began again early in April under the direction of Curfman who visited claimant's home and told him to return to work. Neither Book nor his son appeared on the job. Claimant was paid in cash by Curfman and worked until the date of the accident, May 17, 1943. No question is raised

concerning the compensability of claimant's injuries. The sole question involved is whether Book was claimant's statutory employer at the time of the accident. Or, more precisely put, is there sufficient competent evidence to sustain the board's findings of fact to the effect that Book was claimant's statutory employer?

The answer to this question depends largely upon the contractual relations between Book and Curfman and any agreement or arrangement made by them. The claimant seemed to know very little, if anything, about this subject and Albert Price, the owner of the timber land, testified that he knew nothing about it. Curfman did not testify. The testimony of Price and Book reveals the following facts. On July 1, 1941, Price sold some standing timber on his land to Book in a written agreement. The contract allowed two years to finish the cutting, and provided for extension of time at the rate of $25 per month. Book paid the consideration of $2800 and began operations. At first Curfman did the cutting for Book under contract. Later Book's son, Oscar, took charge and completed the job in February, 1943, at which time Book ceased his operations and removed his tools. Some tree tops and smaller timber not large enough for lumber remained. Book testified that he then "sold out" to Curfman and no longer retained any interest in his contract with Price. Curfman agreed to pay Book $300 for his rights under the contract. This price was to be paid in cross ties that Curfman was to manufacture and sell to Book. Book's trucks were to pick up the ties because Curfman had no means of transporting them. After he sold out to Curfman, Book visited the premises to see whether there was a load of ties ready to be hauled away. Book testified that he had no authority to direct where the men should work and had no authority to hire and fire employees. He did not pay Curfman's employees, or pay any Unemployment Compensation or Social Security taxes for them. Book did, however, have an interest in the sawmill that was being used on the Price

tract and he took the engine away when the mill later burned down. Book also made a payment of $25 to Price for an extension of one month's time, but he made this payment on behalf of Curfman and charged it to Curfman's account.

"A prerequisite to recovery of compensation by a claimant is a showing that he was an employee, and bore to the one sought to be charged the relation of servant and master. James v. Shapiro et al., 135 Pa. Superior Ct. 550, 556, 5 A.2d 815. The burden of proof was upon the claimant. Logue v. Gallagher et al., 124 Pa. Superior Ct. 328, 332, 188 A. 395 :" Sechrist v. Kurtz Bros. et al., 147 Pa. Superior Ct. 214, 216, 24 A.2d 128. A careful review of the record in the instant case discloses that the claimant has failed to meet this burden of proof. Claimant has adequately proved that he was Curfman's employee, but he did not prove either that he was Book's employee or that the premises were under Book's control. Section 203 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 P.S. §52, as amended, defines a statutory employer as "An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, . . ." In order to bring Book within the definition, appellant earnestly urges that Curfman was Book's employee or agent and that Book had control of the premises through his contract with Price. But there is no evidence in claimant's case to support this contention. Claimant has merely shown that Book visited the premises on two occasions and paid Price for an extension of time. Neither Price nor the claimant had any knowledge of Book's arrangement with Curfman. On the other hand, Book testified that he assigned his contractual rights to Curfman and thereafter had no right to control or supervise Curfman's operations. In ascertaining the character of the

relationship, the basic inquiry is whether the alleged servant is subject to the alleged master's control or right to control: *Joseph v. United Workers Assn.*, 343 Pa. 636, 23 A.2d 470. A reasonable view of the evidence does not support a finding that Book was claimant's statutory employer.

The judgment is affirmed.