**Earl PATTON and Sharon Patton, Husband and Wife, Appellee**

v.

**WORTHINGTON ASSOCIATES, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 9, 2011.

Filed March 27, 2012.

Reargument Denied May 31, 2012.

John J. Hare, Philadelphia, for appellant.

Carin A. O'Donnell, Newtown, for appellees.

BEFORE: FORD ELLIOTT, P.J.E., BENDER and MUNDY, JJ.

OPINION BY MUNDY, J.:

Appellant, Worthington Associates, Inc. (Worthington), appeals from the December 30, 2010 judgment entered in favor of Appellees, Earl Patton (Patton) and Sharon Patton (Ms. Patton), in the amount of $1,528,006.54. After careful review, we affirm.

The relevant facts and procedural history, as set forth by the trial court, are as follows.

[T]his personal injury action stems from serious injuries sustained by [Patton] while working on a construction site at a church in Levittown, Bucks County. In 2001, the Christ Methodist Church (hereinafter "the Church") hired Worthington to serve as general contractor for the Fellowship Hall project. Worthington then hired Patton Construction, Inc. (hereinafter "Patton Construction"), which is wholly owned by Patton, to serve as a carpentry contractor on the project.

On October 26, 2001, Patton was to perform spackling of the soffits located along the ceilings of the Church's fellowship hall (hereinafter "the hall"). To perform the spackling, Patton rented and used a scissor lift. Located on the concrete floors of the hall were large holes, roughly two feet in diameter. Previously, Patton had covered the holes with plywood but they were uncovered the day of the injury. Patton had been in the hall multiple times. However, he had not been in the hall for three days prior to the date of the fall and when he arrived at work on this date[,] he discovered that elevator equipment had been placed on the hall floor. While maneuvering the lift to complete the spackling, a wheel on the lift fell into one of the holes in the hall floor causing the lift to fall over. Patton fell fourteen feet and was pinned by the lift resulting in serious injuries including fractured vertebrae. On October 14, 2003, [ ] Patton, [ ] and [Ms.] Patton [ ], husband and wife, filed a lawsuit against Worthington alleging that Worthington was negligent in failing to provide a safe work place and for failing to cover the holes in the concrete.

Trial Court Opinion, 4/29/10, at 2–3 (citations to notes of testimony omitted).

On November 17, 2006, Worthington filed a motion for summary judgment averring it was "the Statutory Employer of Mr. Patton under the Pennsylvania Workmen's Compensation Act, 77 P.S. Section 52[, and] *McDonald v. Levinson Steel Company*, 302 Pa. 287, 153 A. 424 (1930)[,]" and therefore immune from tort liability. *See* Worthington's Summary Judgment Motion, 11/17/06, at ¶ 14. On January 30, 2007, the trial court denied Worthington's motion.

On November 30, 2009, a three-day jury trial commenced. "During the trial, Worthington stipulated that it owed a duty to Patton to provide a safe workplace and breached that duty when it failed to do something that a reasonable careful person would do, or did something that a reasonable careful person would not do." Trial Court Opinion, 4/29/10, at 3. "Worthington also stipulated that Patton's medical expenses were $57,234.71 and that his past lost wages were $21,059.02." *Id.*

On December 2, 2009, the jury reached a verdict, and found as follows; (1) Wor-

thington was negligent; (2) Worthington's negligence was a factual cause in bringing harm to Patton; (3) Patton was contributorily negligent; (4) Patton's contributory negligence was a factual cause in bringing about his harm; (5) 80% of the causal negligence was attributable to Worthington, and 20% of the causal negligence was attributable to Patton; (6) Patton was awarded damages in the amount of $1,000,000.00; (7) Ms. Patton was awarded damages in the amount of $500,000.00 for loss of consortium; and finally the jury specifically found that (8) Patton was an independent contractor, not an employee, of Worthington. *See* Jury Verdict Sheet, 12/2/09. On December 2, 2009, the trial court molded the jury verdict, awarding $800,000.00 to Patton and $400,000.00 to Ms. Patton, for a total award of $1,200,000.00.

Thereafter, on December 11, 2009, Worthington filed post-trial motions requesting, *inter alia*, a grant of judgment notwithstanding the verdict (JNOV) on the basis that Worthington was Patton's statutory employer, a new trial on liability, a new trial on damages, or that the trial court grant remittitur and substantially lower the damages awarded. By opinion and order dated May 5, 2010, the trial court denied Worthington's post-trial motions.

On November 24, 2010, the trial court entered an order directing judgment in Patton's favor in the amount of $1,528,006.54.[1] The same day Appellees praeciped for judgment, and on December 30, 2010, the judgment was entered. On January 3, 2011, Worthington filed a timely notice of appeal.[2]

On appeal, Worthington raises the following issues for our review.

1. Whether judgment n.o.v. is warranted because the trial court erred by interpreting *Lascio v. Belcher Roofing Corp.*, 704 A.2d 642 (Pa.Super.1997), as requiring a "prelude" or "screening question" to the statutory employer test set forth by the Pennsylvania Supreme Court in *McDonald v. Levinson Steel Co.* [302 Pa. 287], 153 A. 424 (Pa.1930)?

2. Whether a new trial is required because the jury instruction in support of this screening question, presented through Interrogatory Number 8, was confusing and insufficient to properly guide the jury as it considered whether the plaintiff, [ ] Patton, was an independent contractor or employee of a general contractor, Worthington [ ]?

3. Whether judgment n.o.v. or a new trial is required because the hole into which [ ] Patton drove his scissor lift was open and obvious as a matter of law, and [ ] Patton admittedly was aware of the hole and the danger it presented?

4. Whether a substantial remittitur or a new trial is required because the jury's verdict was plainly excessive and because it substantially deviated from the trial evidence?

Worthington's Brief at 5.

█ Worthington first argues the "right to statutory immunity is clear given that it meets all five elements required for such immunity set forth by the Pennsylvania Supreme Court in *McDonald v. Levinson*

---

1. Following a dispute over delay damages, the trial court stated the $1,200,000.00 verdict "is hereby molded to reflect the addition of delay damages in the amount of $327,789.04[,]" plus "costs in the amount of $217.50[,]" for a total of $1,528,006.54. Trial Court Order, 11/24/10.

2. Worthington and the trial court have complied with Pa.R.A.P. 1925. We note the trial court has adopted its April 29, 2010 opinion as its Rule 1925(a) opinion.

*Steel Co.* [302 Pa. 287], 153 A. 424 (Pa. 1930)." *Id.* at 12. In support of this contention, Worthington argues, "[w]here these elements are satisfied, statutory immunity arises as a matter of law[.]" *Id.* Therefore, Worthington avers that "the trial court clearly erred when it submitted the issue of whether Worthington was [ ] Patton's employer to the jury as a so-called 'screening question' to the *McDonald* factors." We disagree.

A review of the relevant statutes and case law in this Commonwealth leads to the conclusion that the trial court's decision to present the question of Patton's employment status to the jury was not only proper, but required to determine the applicability of the five element *"McDonald* test" set forth in *McDonald, supra.* As the trial court aptly notes,

> [w]hile Worthington seeks to focus solely on the *McDonald* test, it ignores the major issue in this case. The threshold issue was whether or not Patton was an independent contractor.

Trial Court Opinion and Order, 4/29/10, at 5. The issue of whether or not Patton is an independent contractor focuses on Worthington's ability to meet the first prong of the *McDonald* test, specifically, whether Worthington qualifies as an "employer".

The statutory employer immunity defense arises pursuant to 77 P.S. § 52 of the Workers' Compensation Act (the Act), formerly section 203, which provides as follows.

### § 52. Employers' liability to employe of employe or contractor permitted to enter upon premises

An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or **contractor,** for the performance upon such premises of a part of the employer's regular business entrusted to such employe or **con-** **tractor,** shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

77 P.S. § 52 (emphasis added).

The legislature has defined the key terms in this statute as follows. Under section 21 of the Act, an employer "is declared to be synonymous with master, and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it." 77 P.S. § 21 ("Employer" defined). Further, "employe" pursuant to the statute "is declared to be synonymous with servant[.]" 77 P.S. § 22 ("Employe" defined). Finally, crucial in conjunction with the statutory employer immunity defense is the term "contractor". Under the Act, a "contractor" is defined as follows.

### § 25. "Contractor" defined

The term "contractor," as used in article two, section two hundred and three, and article three, section three hundred and two (b), **shall not include a contractor engaged in an independent business,** other than that of supplying laborers or assistants, in which he serves persons other than the employer in whose service the injury occurs, **but shall include a subcontractor** to whom a principal contractor has sublet any part of the work which such principal contractor has undertaken.

77 P.S. § 25 (emphasis added).

"In ascertaining the character of the relationship, the basic inquiry is whether the alleged servant is subject to the alleged master's control or right to control[.]" *Knepper v. Curfman,* 158 Pa.Super. 287, 44 A.2d 852, 853–854 (1945). "A master is one who stands to another in such a relation that he not only controls the results of the work of that other, but

also may direct the manner in which such work shall be done." *Joseph v. United Workers Ass'n*, 343 Pa. 636, 23 A.2d 470, 472 (1942). "A servant is one who is employed to render personal services to his employer otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter." *Id.*

It is essential to the relation of employer and employee that the employer shall have power and authority to direct and control the acts of the alleged employee. Having this power the employer must respond; lacking it he is not to be held accountable. Respondeat superior is the foundation of liability; and if the employer or principal is without power to command or direct the acts of the alleged employee or agent, there is no superior whose duty it is to respond for the acts of an inferior. **Where a contract is let for work to be done by another in which the contractee reserves no control over the means of its accomplishment but merely as to the result, the employment is an independent one establishing the relation of contractee and contractor and not that of master and servant.** The relation of master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative, so long as he does it in accordance with the contract. The very phrase 'independent contractor' implies that the contractor is independent in the manner of doing the work contracted for.

*Joseph, supra* at 472 (internal citations and quotation marks omitted; emphasis added). "Broadly stated, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor.... It is not ... the fact of actual interference or exercise of control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor." *Weatherly Area Sch. Dist. v. Whitewater Challengers, Inc.*, 532 Pa. 504, 616 A.2d 620, 622 (1992).

In applying the statutory employer immunity defense, this Court has stated, "very great care ... must be exercised before allowing an employer to avoid his liability at common law by asserting that he is a statutory employer. Section 203 [now Section 52] of the Workmen's Compensation Act, which was designed to extend benefits to workers, should not be casually converted into a shield behind which negligent employers may seek refuge." *Travaglia v. C.H. Schwertner & Son, Inc.*, 391 Pa.Super. 61, 570 A.2d 513, 515 (1989), *citing Stipanovich v. Westinghouse Electric Corp.*, 210 Pa.Super. 98, 231 A.2d 894, 898 (1967).

Specifically, in *McDonald,* our Supreme Court elaborated upon this issue and stated the following.

McDonald presents an oftrecurring difficulty. On the one hand, we have persons before us [ ] endeavoring to escape the effect of the Compensation Act so that they will not be compelled to pay compensation or carry insurance, and, on the other hand, as here, when faced with liability at common law, they strive vigorously to come under the sheltering protection of the act....

A statutory employer is a master who is not a contractual or common-law one, but is made one by the Act. There is no difficulty in determining in most cases whether or not one is a statutory employer. The law has been fairly well settled by this court, and the zones of liability or nonliability rather well defined. There are cases, however, [ ]

where no clear chart has been laid down, although many of the decisions are helpful. It will be better for the efficient administration of the Compensation Act to construe it literally as to the obligations created, leaving those under the common law that were apparently intended to be so, and under the Compensation Act those intended.

*McDonald, supra* at 425.

Further, this Court has previously explained the applicability of the statutory employer immunity defense.

> In construing section 203 of the Workmen's Compensation Act, we held that five elements must be present before a contractor may be considered the statutory employer of another **contractor's** employees.
>
> > To create the relation of statutory employer under section 203 of the act, all of the following elements essential to a statutory employer's liability must be present: (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business entrusted to such subcontractor. (5) An employee of such subcontractor.

*Travaglia, supra* at 515 (emphasis added), *quoting McDonald, supra* at 426. Thus,

before a contractor may be considered the statutory employer of another **contractor's** employees, the five element *McDonald* test must be satisfied. Specifically, in order to satisfy the *McDonald* test a master-servant relationship must exist. *See Joseph, supra* at 472. Further, because an independent contractor can **never** be a statutory employee, the elements of the *McDonald* test cannot be met where a "contractor" is an independent contractor. *See Peck v. Delaware County Bd. of Prison Inspectors,* 765 A.2d 1190 (Pa.Cmwlth. 2001). Thus, in the case sub judice, in order to properly apply the *McDonald* test, under the first element, a determination had to be made whether a master-servant relationship existed, or whether Patton was an independent contractor.

Herein, on November 17, 2006, Worthington filed a motion for summary judgment asserting immunity from liability as a statutory employer of Patton. On January 30, 2007, the trial court denied Appellant's motion for summary judgment, albeit, without explanation.[3]

■ The case proceeded to trial, and the jury was charged with the factual determination of whether "Plaintiff Earl Patton was an independent contractor or employee with respect to Worthington Associates, Inc." *See* Jury Verdict Slip, 12/2/09, Question 8. After deliberation, the jury concluded Patton was an independent

---

3. As noted, the trial court's order of January 30, 2007 denied Appellant's motion for summary judgment without explanation. However, the trial court's Rule 1925(a) opinion, discussed *infra,* states the trial court determined an issue of material fact existed. Therefore, the trial court properly put the question to the jury. *See Wilkinson v. K–Mart,* 412 Pa.Super. 434, 603 A.2d 659, 660 (1992) (holding, "[a]s an appellate court, we are bound to consider certain principles which dictate when and under what circumstances a trial court may properly enter summary judgment .... sum-

mary judgment should not be entered unless the case is clear and free from doubt[ ]") (citations omitted); *see also LJL Transp., Inc. v. Pilot Air Freight Corp.,* 599 Pa. 546, 962 A.2d 639, 647 (2009) (citations omitted) (holding, "[t]he entry of summary judgment is proper whenever no genuine issue of any material fact exists as to a necessary element of the cause of action. The moving party's right to summary judgment must be clear and free from doubt. We ... resolve all doubts as to the existence of a genuine issue of material fact against the moving party").

contractor, and therefore, Worthington could not be a statutory employer of Patton. Worthington filed post-trial motions that were subsequently denied by the trial court. In support of its denial of Worthington's post-trial motion for JNOV, the trial court reasoned as follows.

> The factual circumstances of the job site and the contract language between Worthington and Patton created an issue as to whether or not Patton was a subcontractor or independent contractor and a determination had to be made as to that status.[5] [The trial court] determined that these were factual issues that were best decided by the jury. [The trial court] charged the jury with the standards for determining whether one is an independent contractor or employee in accordance with the factors listed in *Zimmerman* [*v. Commonwealth, Public Sch. Employees' Retirement Bd.*, 513 Pa. 560, 522 A.2d 43 (Pa.1987) ]. Based on the evidence presented to it, the jury found that Patton was an independent contractor. Therefore, Worthington cannot rely on the *McDonald* elements to escape liability and Worthington's motion for judgment notwithstanding the verdict is denied.

---

[5]Worthington claims that the contract between itself and Patton refers to Patton Construction as the subcontractor and that this establishes that Worthington is Patton's employer. However, as the *Lascio* [*v. Belcher Roofing Corp.*, 704 A.2d 642 (Pa.Super.1997),] Court stated, "we ... [are] not controlled by the names used by the parties to describe their relationship. Rather, the court must look to the entire body of the contract and its purpose to determine the legal effect." *Id.* at 645, *citing Pastore v. Anjo Constr. Co.*, [396 Pa.Super. 58] 578 A.2d 21 ( [Pa.Super.]1990).

Trial Court Opinion and Order, 4/29/10, at 6.

In *Lascio v. Belcher Roofing Corp.*, 704 A.2d 642 (Pa.Super.1997), Mr. Lascio, the employee of a subcontractor, brought a negligence action against the general contractor, Barclay–White. After the jury returned a verdict in Mr. Lascio's favor, the trial court granted JNOV in favor of Barclay–White, Inc., on the basis that Barclay–White was a statutory employer. This Court remanded the matter because the trial court "granted j.n.o.v. for Barclay–White without finding Samuel Lascio was, in fact, an employee **rather** than an independent contractor." *Id.* at 645 (emphasis added). Similar to what Worthington asks this Court to do in the case *sub judice*, the trial court in *Lascio* employed the five-element *McDonald* test to conclude Barclay–White was a statutory employer without also analyzing whether Mr. Lascio's employer was a subcontractor or an independent contractor. On appeal, this Court in *Lascio* noted that,

> this argument is actually an attack on Barclay–White's ability to meet the first element of the statutory employer defense, specifically, whether Barclay–White qualifies as "an employer" with respect to Samuel Lascio. A contractor cannot claim statutory employer immunity with respect to an independent contractor. *See, e.g., Robson v. Martin*, 291 Pa. 426, 140 A. 339 (1928); *Strunk v. Keller*, 75 Pa.Super. 462 (1921). *See also Rolick v. Collins Pine Co.*, 925 F.2d 661 (3d Cir.1991) (holding that an independent contractor could not be a statutory employee of the general contractor). Therefore, for Barclay–White to prevail on the statutory employer defense, Samuel Lascio must be deemed an employee of Barclay–White.

*Lascio, supra* at 645. In order to make such a determination, the trial court would be compelled to conduct an analysis of the independent contractor factors. *See Zim-*

*merman, supra* at 44–45.[4] In the instant matter, Worthington argues that the circumstances of *Lascio* are distinguishable as *Lascio* included an "independent contractor clause" in the contract, which is not present in the case *sub judice*. However, this Court's analysis "is not controlled by the names used by the parties to describe their relationship. Rather, the court must look to the entire body of the contract and its purpose to determine the legal effect." *Lascio, supra* at 645, *citing Pastore v. Anjo Constr. Co.*, 396 Pa.Super. 58, 578 A.2d 21 (1990). Similar to *Lascio*, the instant circumstances compelled a factual determination as to the relationship between Patton and Worthington. Specifically, in order to apply the *McDonald* test, a factual determination was required to determine if Worthington was an "employer." The issue of whether Worthington was an "employer" hinged entirely on whether Patton was an independent contractor.

Additionally, in reasoning Patton should be a statutory employee, Worthington also relies on a plurality decision by our Supreme Court in *Peck v. Delaware County Bd. of Prison Inspectors*, 572 Pa. 249, 814 A.2d 185 (2002). Worthington's Brief at 17, 19–20. In *Peck*, a corrections officer employed by Wackenhut Corrections Corporation brought a negligence action against the Board of Prison Inspectors (the Board). The trial court granted summary judgment in favor of the Board on the basis that the Board was the statutory employer of Peck, and therefore may not be sued in a negligence action by him. On appeal, the Commonwealth Court reversed the trial court's order finding that the Board, as the owner, or one standing in the shoes of the owner, was not a statutory employer.

In its decision, the Commonwealth Court also articulated the following reasoning for reversing the trial court's grant of summary judgment.

> The Prison Board is [ ] not a statutory employer here because Peck's employer, Wackenhut, is an independent contractor. *Simonton v. Morton*, 275 Pa. 562, 568, 119 A. 732, 734 (1923) [ ], established the benchmark for the determination of independent contractor status when the Supreme Court said:
>
> > Where a contract is let for work to be done by another in which the contractee reserves no control over the means of its accomplishment, **but merely as to the result,** the employment is an independent one establishing the relation of a contractee and contractor and **not that of master and servant.**

---

4. In *Zimmerman* we held the following.
 This Court on several occasions has analyzed the difference between an individual employee and an independent contractor. In *Feller v. New Amsterdam Casualty Co.*, 363 Pa. 483, 70 A.2d 299 (1950), the major characteristic was defined as the exclusive control over performance, the responsibility being only for the result. To determine one's status we set forth an analysis in *Hammermill Paper Co. v. Rust Engineering Co.*, 430 Pa. 365, 243 A.2d 389 (1968), which retains its vitality as a guide. That analysis consists in considering:
 > Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.

 *Id.* at 370, 243 A.2d at 392 (*quoting Stepp v. Renn*, 184 Pa.Super. 634, 637, 135 A.2d 794, 796 (1957)).
 *Zimmerman, supra* at 44–45.

*[Id.]* (Emphasis added).

Our Supreme Court also considered the legal principles attendant to independent contractor status in *Smith–Faris Co. v. Jameson Memorial Hospital Ass'n*, 313 Pa. 254, 169 A. 233 (1933). Citing with approval its previous holding in *Simonton*, it noted that though the hospital in that case reserved some degree of control over the work to be done by the construction company:

> [T]his control did not take away the [construction company's] independence; it merely removed that independence a few degrees further away from absoluteness than it otherwise would have been.... Only when the independence of a contractor is so completely taken away as to make his selection of the means and methods of carrying out his work subject to his employer's will does he become a mere employee or agent.

*Id.* at 260, 169 A. at 235.

*Peck v. Delaware County Bd. of Prison Inspectors*, 765 A.2d 1190, 1194–1195 (Pa. Cmwlth.2001). Our Supreme Court granted *allocator*, and affirmed the Commonwealth Court, allowing Peck to sue the Board in negligence as it was not his statutory employer. The final footnote of the opinion reads as follows.

> Because we conclude that the Board does not meet the test for statutory employer set forth in *McDonald*, we need not review the determination by the Commonwealth Court that Appellee is not the statutory employee of the Board because Wackenhut, Appellee's employer, qualifies as an independent contractor.

*Peck, supra* at 192 n. 4 (Pa.2002).

Based on its determination that the Board did not satisfy the *McDonald* test, our Supreme Court did not have to determine if Wackenhut was an independent contractor. Importantly, our Supreme Court in *Peck* did not overrule the statutorily defined precedent that an independent contractor cannot be a contractor for purposes of the Act. *See* 77 P.S. § 25.

 Finally, upon review of the trial court's determination that Patton was an independent contractor, the trial court concluded as follows.

> [T]he jury was presented with ample evidence to support its finding that Patton was an independent contractor. Testimony was provided establishing the following: Worthington did not direct Patton Construction's employees; Worthington did not direct Patton on how to do his job; Patton was in charge of creating schedules and determining when to arrive to work and not Worthington; Patton determined how many men were needed on the job site and paid those men directly; Patton would order the materials and supplied the equipment to perform the work including renting the scissor lift; Patton would keep a daily log of the work he performed at the work site and Worthington was never asked or required him to provide copies of schedules, documents, or logs.

Trial Court Opinion, 4/29/10, at 6–7.

Based on all of the foregoing, we agree with the trial court's conclusion that Patton is an independent contractor, and therefore, Worthington is not immune to liability based on the statutory employer defense, and we decline to grant JNOV.

 In its second issue, Worthington avers "even if this Court declines to award judgment n.o.v. based upon statutory employer immunity, the erroneous jury charge [regarding interrogatory number 8] warrants a new trial." Worthington's Brief at 23. In support of this averment

Worthington argues "the trial court denied defense proposed charges that would have more thoroughly defined independent contractors and employees and would have defined each of the elements of the McDonald test for the jury." *Id.* at 24. Further, Worthington argues, "the trial court opted to charge the jury without telling them how to analyze the specified factors or how a finding on any or all of the factors determined whether Mr. Patton was an independent contractor or employee." *Id.* Finally, Worthington concludes that, "in addition to the fact that Interrogatory Number 8 never should have been submitted to the jury, the charge supporting the interrogatory was confusing and clearly insufficient to guide the jury in answering the interrogatory." *Id.*

> Under Pennsylvania law, our standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. It is only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue that error in a charge will be found to be a sufficient basis for the award of a new trial.

*Lewis v. CRC Industries, Inc.,* 7 A.3d 841, 844 (Pa.Super.2010) (internal citations and quotation marks omitted). "Further, a trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." *Lockley v. CSX Transp. Inc.,* 5 A.3d 383, 394 (Pa.Super.2010) (citation and quotation marks omitted).

In the instant matter, the trial court began by reviewing the eight interrogatories on the verdict sheet, and preliminarily instructed the jury as follows.

> And then we have a different question with No. 8. No. 8 is asking whether—what the status is of the plaintiff and you have two choices and I'll tell you more about it. You can choose independent contractor or employee. And there are certain legal consequences, which I'm not going to go into now, depending on how you choose, but factually you have to decide whether he is an independent contractor or is deemed an employee of Worthington. And I'll give you these factors.

N.T., 12/2/09, at 66–67.

The trial court proceeded to instruct the jury on the relevant law regarding the first seven interrogatories, and ended by instructing the jury to consider the following in determining interrogatory number 8.

> Let's go to Question 8. And let me first read it.
>
> "Is Plaintiff, Earl Patton, an independent contractor or an employee with respect to Worthington Construction?" You've got to choose one of these two labels. Don't be misled by any labels during the trial. You know these are your two choices. Okay? I'm going— I'm going to give you an instruction that will hopefully guide you in making one of these two choices and then certain legal consequences will flow from that and that's something I have to decide.
>
> So—but I need the factual issue of whether he's an employee or an independent contractor based on what you heard during the trial. So I'm going to read this.
>
> The factors you must consider in determining whether Mr. Patton is an independent contractor or an employee of Worthington Associates are:
>
> Control of the work, the nature of the work or occupation, skill required for performance of the work, whether one is

engaged—whether one engaged is in a distinct operation or business, which parties supply the tools, whether payment is made by the time or by the job, whether work is part of the regular business of the employer, and the right to terminate employment at any time.

Those are the factors that are usually given traditionally in making the determination. You see what you can do with them. Okay?

*Id.* at 80–81.

The trial court correctly provided the jury with the factors that must be considered in determining whether Patton was an independent contractor or an employee. *See Zimmerman, supra* at 45. Further, we are not persuaded by Worthington's argument that the jury should have been instructed as to the *McDonald* test factors. As already discussed extensively, the factual determination of whether or not Patton was a independent contractor needed to be determined to meet the first element of the *McDonald* test. As a result, the jury did not need instructions on the *McDonald* test.

■ The trial court's jury instruction accurately set forth the factors the jury needed to consider in determining the factual question of Patton's employment status. *See Lockley, supra* at 394. Therefore, the trial court did not abuse its discretion or make an error of law. *See Lewis, supra* at 844. Accordingly, we conclude Worthington's claim lacks merit.

■ In its third issue, Worthington contends, "[b]ecause the hole into which Mr. Patton drove his scissorlift was open and obvious as a matter of law and Mr. Patton admittedly was aware of the hole and the danger it presented, judgment n.o.v. is required." Worthington's Brief at 25. Further, Worthington argues that, "[a]t a minimum, the refusal to charge the

jury on the issue was erroneous and a new trial is required." *Id.*

In support of this argument, Worthington relies on section 343 of the Restatement (Second) of Torts, which states the following.

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343. Comment (a) to section 343 states, "[t]his Section should be read together with § 343A, which deals with the effect of the fact that the condition is known to the invitee, or is obvious to him, as well as the fact that the invitee is a patron of a public utility. That Section limits the liability here stated. In the interest of brevity, the limitation is not repeated in this Section." RESTATEMENT (SECOND) OF TORTS § 343, cmt. (a). Employing this comment, Worthington cites section 343A and concludes that "[c]onsequently, the law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by his invitee." Worthington's Brief at 25.

Section 343A in its entirety states as follows.

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the

land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

RESTATEMENT (SECOND) OF TORTS § 343A.

In analyzing Worthington's claim, the trial court aptly determined that comment (f) to section 343A provides a caveat applicable in the instant matter. Comment (f), in turn, provides that,

[t]here are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.

In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (*See* §§ 466 and 496D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.

RESTATEMENT (SECOND) OF TORTS § 343A, cmt. (f).

In reaching the conclusion that Worthington was not entitled to relief, the trial court reasoned as follows.

While making its argument under the Restatement, Worthington contends that Patton was aware of the holes and could even see them from the lift. However, Worthington ignores the context of Patton's statements. Patton never admitted that he saw the holes from the lift on the date he was injured. Patton's comments about the holes related to a different date than the date of the injury. Worthington also ignores the fact that a major change in the condition of the hall had occurred between those dates; elevator equipment had been placed on the hall floor on the date of the injury. When Patton admitted that he knew of the holes and that he could see them on the lift, it was on a day prior to the elevator equipment being placed in the hall.

Specifically, Patton was asked about his ability to see the holes while working in the lift five or six days before the accident. He was then asked if there was any elevator equipment in the hall at the time and responded that there was not. He then left the hall for three days before returning to do more work. When he returned, elevator equipment had been placed on the floor of the hall. In commenting on the condition of the hall that day, Patton stated, that "there

were lines of equipment. Like a row here and then a space and then another row and another space." While he was performing his work in the lift, Patton stated that the elevator equipment was lined up along his left side and that he was working in between the equipment and the soffit. The fact that the floor was lined with equipment marks a significant change in the condition of the hall and is counter to Worthington's assertion that the holes were open and obvious.

Similar to the situation described in comment f of section 343A, Patton also presented evidence that he was distracted while operating the lift. In response to if he was thinking about the elevator equipment while he was moving the lift, Patton stated that, "I was thinking the whole time I was moving, if I damage anybody else's equipment, I'm going to end up paying for it. So I'm trying not to hit that [and] I'm trying ... not to hit the wall." As for whether he saw the hole on the day of the accident, Patton was specifically asked, "[Could] [y]ou see the hole before the lift went into it?" He responded, "[N]o, I didn't see it." Additionally, Patton was spackling while he was in the lift. Based on this testimony, we find that this situation may be of the kind contemplated by the comments to section 343A as the testimony establishes that Patton was distracted at the time of the accident and does not support Worthington's claim that Patton was aware of the holes and appreciated the danger at the time.

Trial Court Opinion, 4/29/10, at 12–13 (citations and one footnote omitted).

We agree with the trial court's well-reasoned analysis, and accordingly will not disturb its conclusion. Additionally, the trial court adequately explained its reasoning for declining to instruct the jury as Worthington requested. Specifically, the jury was charged on contributory negligence, and did in fact find Patton 20% negligent. *See* Jury Verdict Sheet, 12/2/09; *see also* Trial Court Opinion, 4/29/10, at 15. As a result, the trial court's jury charge adequately instructed the jury on Patton's liability. Therefore, Appellant's third issue is without merit.

In its final issue, Worthington argues, "the jury's $1.5 million verdict was manifestly excessive under the common law standard, and it substantially deviated from the evidence under [Pa.R.C.P.] 1042.72."[5] Worthington's Brief at 30. Additionally, in support of its argument that the verdict was excessive, Worthington cites a previous decision of this Court setting forth factors to be considered.

In determining whether a jury's award of damages is supported by the evidence, the following factors are taken into account:

1.) the severity of the injury;

2.) whether the injury is demonstrated by objective physical evidence or subjective evidence;

3.) whether the injury is permanent;

4.) the plaintiff's ability to continue employment;

5.) disparity between the amount of out of pocket expenses and the amount of the verdict; and

6.) damages plaintiff requested in his complaint.

---

**5.** We note Rule 1042.72, that Worthington purports to rely on, governs "Medical Professional Liability Actions[,]" and is therefore inapplicable in the instant matter. *See* Pa. R.C.P. 1042.72. To the extent, however, that Worthington relies on common law, we are able to address its claim.

*Smalls v. Pittsburgh–Corning Corp.*, 843 A.2d 410, 415 (Pa.Super.2004); *see also* Worthington's Brief at 8.[6] Worthington contends, "[u]nder either standard, all five factors used to determine whether a verdict is excessive are clearly met here[.]" Worthington's Brief at 30 (footnote omitted). As a result, Worthington argues, "[a] substantial remittitur or a new trial is therefore required." *Id.* at 32.

▬▬▬▬ Our standard of review of such matters is as follows.

We review a trial court order denying remittitur for an abuse of discretion or an error of law. We will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. Large verdicts are not necessarily excessive verdicts; each case is unique and dependent on its own special circumstances. In awarding damages for past or future non-economic loss, **a jury may consider,** *inter alia,* the age of the plaintiff, the severity of his or her injuries, whether the injuries are temporary or permanent, the duration and nature of medical treatment, the duration and extent of physical pain and mental anguish on the part of the plaintiff, and the plaintiff's physical condition before the injuries. *See* Pa.R.C.P. 223.3.

*Hyrcza v. West Penn Allegheny Health System, Inc.,* 978 A.2d 961, 979 (Pa.Super.2009) (emphasis added).

▬▬▬ Bearing in mind our standard, we conclude the trial court did not abuse its discretion or commit an error of law. First, Worthington argues Appellant's injury was not severe because "[h]e made a very good recovery within a short time after the fall, and there was no testimony at trial that he will need any further medical treatment." Worthington's Brief at 30.

On the contrary, as the trial court notes in its Rule 1925(a) opinion, the jury was provided with ample evidence of Appellant's injuries. Specifically, "Patton had suffered a burst comminuted fracture of the L2 vertebrae and the fracture fragments had been displaced backward into his spinal canal." Trial Court Opinion, 4/29/10, at 16; *see also* N.T., 4/7/09, at 14–15. Patton's orthopedic surgeon testified that Patton's injuries are permanent, "they're not expected to get any better; they're for the rest of his life." N.T., 4/7/09, at 18.

Worthington next attempts to argue "Patton's subjective complaint of pain" is not demonstrated by objective medical evidence. Worthington's Brief at 30. However, this claim is belied by the record as Patton's orthopedic surgeon "testified that Patton suffered from chronic lower back pain as a result of the accident and that his injury was permanent." Trial Court Opinion, 4/29/10, at 16; *see also* N.T., 4/7/09, at 17–18.

Finally, the trial court summarized portions of the other relevant evidence the jury had heard.

The injury had an impact on the Patton's family and especially his wife. Among other changes, he is no longer able to lift his disabled adult daughter who has spina bifida as he was able to do prior to the injury. As a result, [Ms.] Patton had to take over lifting their daughter when Patton was first injured. Her husband could no longer help with such care. This inability also resulted in the need to purchase a handicapped accessible van that requires less lifting. While the purchase of the van helped the situation, it does not deal with help-

---

**6.** Worthington notes that "[o]ur procedural rules no longer require a plaintiff's Complaint to specify the amount of damages demanded, so the sixth element of the *Smalls* analysis is no longer relevant." Worthington's Brief at 30.

ing their daughter in the house or places other than the van.

Trial Court Opinion, 4/29/10, at 17.

The jury was free to consider and weigh all relevant factors in making its determination, and was not required to give certain factors greater weight. *Hyrcza, supra* at 979. Our independent review of the record reveals the jury had ample evidence of Patton's injuries and the lasting effect of those injuries on his everyday life. Based on the evidence presented, we conclude the verdict does not "shock our sense of justice[,]" and therefore, Appellant's final issue fails. *Id.*

For all the foregoing reasons, we conclude the trial court did not err in denying Worthington's post-sentence motion. Accordingly, we affirm the $1,528,006.54 judgment entered in favor of Appellees.

Judgment affirmed.

Judge BENDER files a Dissenting Opinion.

## DISSENTING OPINION BY BENDER, J.:

I respectfully dissent from the Majority's decision affirming the trial court's judgment entered in favor of Earl and Sharon Patton. Instead, I would reverse the judgment in the Pattons' favor and direct the trial court to enter judgment for Worthington Associates, Inc., based upon a determination that Worthington met the test set forth in *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930), and should, therefore, be deemed Earl Patton's statutory employer.

Worthington challenges the trial court's imposition of the "prelude" or "screening question" based on the trial court's interpretation of *Lascio v. Belcher Roofing Corp.*, 704 A.2d 642 (Pa.Super.1997). This claim centers on the trial court's placing of the question—whether Patton was an inde-

pendent contractor or an employee of Worthington—before the jury. In countering the trial court's action in placing the question before the jury, Worthington asserts that the issue here is whether it met the five-prong test enunciated in *McDonald*, noting that the trial court and Patton agreed "that if [Patton] were not an independent contractor, Worthington would be his statutory employer because the *McDonald* test would otherwise be met and Worthington would win as a matter of law." Trial Court Opinion, 5/5/10, at 5. Moreover, Worthington claims that *Lascio* does not require:

> a threshold factual determination by the jury of whether Mr. Patton was an independent contractor or employee of Worthington as the general contractor. Rather, *Lascio* focused on whether Mr. Lascio was an independent contractor because the contract in that case, unlike the one here, contained an "independent contractor clause."

Worthington's brief at 15.

In discussing the question—who is a statutory employer under the Act—our Supreme Court's decision in *Peck v. Delaware County Bd. of Prison Inspectors*, 572 Pa. 249, 814 A.2d 185 (2002), reiterated the criteria set forth in *McDonald* as follows:

> To create the relation of statutory employer under section 203 of the act ... all of the following elements must be present: (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business intrusted [sic] to such subcontractor. (5) An employee of such subcontractor.

*Peck*, 814 A.2d at 188 (quoting *McDonald*, 153 A. at 426). The *Peck* court then explained:

The classic statutory employer situation is in the construction industry, where a property owner hires the general contractor, who hires a subcontractor to do specialized work on the jobsite, and an employee of the subcontractor is injured in the course of his employment. *See Cranshaw Construction Inc. v. Ghrist,* 290 Pa.Super. 286, 434 A.2d 756 (Pa.Super.1981) (general contractor immune from suit as statutory employer of injured employee of carpentry subcontractor). In those situations, the general contractor who meets the five-part *McDonald* test qualifies as the statutory employer of the subcontractor's employee, and is immune from suit by that employee.

*Peck,* 814 A.2d at 188–89. Accordingly, the *McDonald* factors are the appropriate elements to apply to determine whether the general contractor is protected by the statutory employer defense.

However, as noted by Worthington, the trial court here relied on the *Lascio* case, wherein the trial court granted JNOV in favor of Barclay–White, the general contractor, on the basis that it was the statutory employer of Mr. Lascio, who was injured while working as an employee at a construction site for one of the subcontractors. Notably, the contract involved in *Lascio* contained an independent contractor clause, which provided that subcontractors and persons hired by the subcontractors are independent contractors and "shall *not* be deemed to be the employees of [the general contractor] for any purposes whatsoever." *Lascio,* 704 A.2d at 645 (emphasis added). In response to Mr. Lascio's negligence claim and based on the statutory employer defense, Barclay–White moved for dismissal, but the trial court reserved consideration of the motion until after the jury's verdict. After the jury found in favor of Mr. Lascio and his wife, the trial court granted JNOV on the statutory employer defense.

On appeal, this Court refused to affirm the judgment, explaining that it would not create a presumption against the validity of independent contractor clauses and reasoning that "[s]uch a holding would allow Barclay–White to ignore that clause and claim immunity in tort but assert that same clause in defense of an action for Workers' Compensation benefits." *Lascio,* 704 A.2d at 645. The *Lascio* court then remanded the case for the trial court to determine the effect of the contract clause on the issue as to whether Mr. Lascio was an employee or an independent contractor, indicating that Barclay–White could not claim statutory employer immunity if Mr. Lascio was an independent contractor.

Instantly, the contract in this case does not contain an independent contractor clause. Therefore, *Lascio* is not applicable. Rather, cases like *McDonald* and *Peck* guide the decision here. The *Peck* decision states that "we endorse the principle that, for purposes of Section 203 statutory employer immunity, statutory employer status should be found only where all five elements of the *McDonald* test are clearly met." *Peck,* 814 A.2d at 190. Nor have we found any cases in which an independent contractor analysis was performed where the property owner hires a general contractor, who hires a subcontractor to work at the construction site, and no independent contractor clause is contained in the contract.

Here, the trial court determined that "[t]he threshold issue was whether or not Patton was an independent contractor." T.C.O. at 5. The court also indicated that "[a]t the conclusion of the trial Patton agreed that if he were not an independent contractor, Worthington would be his statutory employer because the *McDonald* test would otherwise be met and Wor-

thington would win as a matter of law." *Id.* However, the court overlooked the following: "The issue of whether an employer is a 'statutory employer' for purposes of the Workmen's Compensation Act is properly the subject of a motion for summary judgment, as 'whether the facts as they are determined to exist constitute an employment relationship is strictly a question of law.'" *Mullins v. Sun Co., Inc.,* 763 A.2d 398, 399 n. 3 (Pa.Super.2000) (quoting *Wilkinson v. K–Mart,* 412 Pa.Super. 434, 603 A.2d 659, 661 (1992)). Accordingly, the determination as to what employment status existed should **not** have been presented to the jury, but rather should have been decided by the court. *Cherniak v. Prudential Ins. Co. of Am.,* 339 Pa. 73, 14 A.2d 334, 335 (1940) (stating "[i]t is well settled that if the determination of an issue on trial rests on a question of law, the court determines it."). Thus, I would determine that the jury's conclusion that Patton was an independent contractor should not stand. Consequently, I would reverse the judgment in Patton's favor and direct the trial court to enter judgment for Worthington, since Patton agrees that Worthington has met the *McDonald* test, which controls the outcome here. *Peck,* 814 A.2d at 189 (a general contractor who meets the *McDonald* test qualifies as the statutory employer and is immune from suit by the subcontractor's employee).